IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| _____ ) | |
| JACE YARBROUGH ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 4:23-cv-00876 (ALM) |
| v. ) | |
| ) | |
| THE UNITED STATES SPACE FORCE, ) | |
| *et al.*, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

## AGENCY AND OFFICIAL-CAPACITY DEFENDANTS' MOTION TO DISMISS

The agency and official-capacity defendants move for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1) and Federal Rule of Civil Procedure 12(b)(6).  Dismissal pursuant to 12(b)(1) is appropriate for lack of jurisdiction because Plaintiff failed to exhaust his administrative remedies.  Dismissal pursuant to 12(b)(6) is appropriate because Plaintiff has failed to state a claim.

The agency and official-capacity defendants respectfully request oral argument on this matter.

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ............................................................................................................... 1

STATUTORY AND REGULATORY BACKGROUND............................................................ 2

I.     The Structure of the United States Military ............................................................. 2

II.    Military Discipline ............................................................................................. 3

FACTUAL AND PROCEDURAL BACKGROUND.................................................. 6

STATEMENT OF THE ISSUES............................................................................ 9

STANDARDS OF REVIEW ................................................................................ 10

ARGUMENT .................................................................................................... 10

I.     Plaintiff's Complaint Should Be Dismissed Because Plaintiff Has Not Exhausted
His Administrative Remedies ......................................................................... 10

II.    Plaintiffs' Complaint Should Be Dismissed for Failure to State a Claim...................... 12

        A.    Plaintiff Has Failed to State a Claim Under the APA (Claims One, Three,
Four, Five, and Six) ............................................................................... 12

                1.    Plaintiff Has Failed to Plausibly Allege that the Air Force Lacks
Statutory Authority to Administratively Discipline Reservists Not
on Active-Duty (Claim One) ................................................... 12

                2.    Plaintiff Has Failed to Plausibly Allege that the LOA Violates His
First Amendment Right to Freedom of Speech (Claim Four) ................. 16

                3.    Plaintiff Has Failed to Plausibly Allege that the LOA Violates His
First Amendment Right to Freedom of Religion (Claim Three) ............. 19

                4.    Plaintiff Has Failed to Plausibly Allege that the Letter of
Admonishment Was Inconsistent with Air Force Regulations
(Claim Five)............................................................................ 22

                5.    Plaintiff Has Failed to Plausibly Allege that the Letter of
Admonishment was Arbitrary or Capricious (Claim Six) ....................... 24

        B.    Plaintiff Has Failed to State a Claim Under RFRA (Claim Two) ....................... 28

        C.    Plaintiff Has Failed to State a Claim Under the First Amendment (Claim
Seven) ................................................................................................. 30

CONCLUSION.................................................................................................... 30

i

## TABLE OF AUTHORITIES

**CASES**

*A.A. v. Needville Indep. Sch. Dist.*,
  611 F.3d 248 (5th Cir. 2010) ........................................................................... 20

*Adkins v. Kaspar*,
  393 F.3d 559 (5th Cir. 2004) ........................................................................... 28

*Albright v. Oliver*,
  510 U.S. 266 (1994) ........................................................................................ 10

*Ariz. Free Enter. Club's Freedom Club PAC v. Bennett*,
  564 U.S. 721 (2011) ........................................................................................ 18

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................................ 10

*Brown v. Glines*,
  444 U.S. 348 (1980) ................................................................................... 18, 20

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*,
  508 U.S. 520 (1993) ........................................................................................ 21

*Coal. for Workforce Innovation v. Walsh*,
  No. 1:21-CV-130, 2022 WL 1073346 (E.D. Tex. Mar. 14, 2022) ......................... 27

*Crawford v. Tex. Army Nat'l. Guard*,
  794 F.2d 1034 (5th Cir. 1986) ...................................................................... 9, 11

*Citizens for Resp. & Ethics in Wash. v. Fed. Election Comm'n*,
  993 F.3d 880 (D.C. Cir. 2021) ......................................................................... 26

*Emp. Div., Dept. of Hum. Res. of Or. v. Smith*,
  494 U.S. 872 (1990) ................................................................................... 20, 21

*Fernandez–Montes v. Allied Pilots Ass'n*,
  987 F.2d 278 (5th Cir. 1993) ........................................................................... 10

*Gillette v. United States*,
  401 U.S. 437 (1971) ........................................................................................ 21

*Goldman v. Weinberger*,
  475 U.S. 503 (1986) ..................................................................... 16, 18, 19, 20

*Greer v. Spock*,
  424 U.S. 828 (1976) ................................................................................... 18, 19

*Heckler v. Chaney*,
   470 U.S. 821 (1985)...................................................................................................... 26

*Henderson v. Kennedy*,
   253 F.3d 12 (D.C. Cir. 2001) ........................................................................................ 28

*Hodges v. Callaway*,
   499 F.2d 417 (5th Cir. 1974) ........................................................................................ 11

*Huawei Techs. USA, Inc. v. Fed. Commc'ns Comm'n*,
   2 F.4th 421 (5th Cir. 2021) ............................................................................ 24, 25, 26

*Klingenschmitt v. United States*,
   119 Fed. Cl. 163 (2014), *aff'd*, 623 F. App'x 1013 (Fed. Cir. 2015) ................. 18, 29

*Kreis v. Sec'y of Air Force*,
   866 F.2d 1508 (D.C. Cir. 1989) ............................................................................. 24, 27

*Lawrence v. McCarthy*,
   344 F.3d 467 (5th Cir. 2003) ........................................................................................ 11

*Locks v. Laird*,
   300 F. Supp. 915 (N.D. Cal. 1969), *aff'd*, 441 F.2d 479 (9th Cir. 1971) ................. 18

*Mahoney v. Doe*,
   642 F.3d 1112 (D.C. Cir. 2011) .................................................................................... 29

*Orloff v. Willoughby*,
   345 U.S. 83 (1953) ........................................................................................................ 24

*Ortiz v. United States*,
   138 S. Ct. 2165 (2018) .................................................................................................... 6

*Parker v. Levy*,
   417 U.S. 733 (1974)........................................................................................... 17, 18, 20

*Polnac v. City of Sulphur Springs*,
   555 F. Supp. 3d 309 (E.D. Tex. 2021) ........................................................................... 7

*Priest v. Sec'y of Navy*,
   570 F.2d 1013 (D.C. Cir. 1977) .................................................................................... 17

*Reed v. Town of Gilbert, Ariz.*,
   576 U.S. 155 (2015)....................................................................................................... 18

*Reilly v. Sec'y of the Navy*,
   12 F.Supp.3d 125 (D.D.C. 2014) .................................................................................. 24

*Rigdon v. Perry*,
   962 F. Supp. 150 (D.D.C. 1997) ................................................................. 18, 19

*Sligh v. City of Conroe*,
   87 F.4th 290 (5th Cir. 2023) ........................................................................... 10

*Strickland v. Danzig*,
   235 F.3d 1339 (5th Cir. 2000) ......................................................................... 11

*U.S. Dep't of Just. v. FLRA*,
   955 F.2d 998 (5th Cir. 1992) ...................................................................... 16, 20

*United States v. Brown*,
   55 M.J. 375 (C.A.A.F. 2001) .......................................................................... 14

*United States v. Czekala*,
   42 M.J. 168 (C.A.A.F. 1995) .......................................................................... 25

*United States v. Gray*,
   42 C.M.R. 255 (C.M.A. Aug. 28, 1970) ...................................................... 17, 20

*United States v. Lee*,
   455 U.S. 252 (1982) ........................................................................................ 20

*United States v. St. Luke's Episcopal Hosp.*,
   355 F.3d 370 (5th Cir. 2004) ........................................................................... 10

*Villarreal v. Wells Fargo Bank, N.A.*,
   814 F.3d 763 (5th Cir. 2016) ........................................................................... 10

*Weaver v. United States*,
   46 Fed. Cl. 69 (2000) ...................................................................................... 15

*Williams v. Roche*,
   468 F. Supp. 2d 836 (E.D. La. 2007) ............................................................... 15

*Willoughby v. United States*,
   730 F.3d 476 (5th Cir. 2013) ........................................................................... 10

*Wilson v. James*,
   139 F. Supp. 3d 410 (D.D.C. 2015),
   *aff'd*, 2016 WL 3043746 (D.C. Cir. May 17, 2016) ....................................... *passim*

**STATUTES**

5 U.S.C. § 706 ............................................................................................... *passim*

10 U.S.C. Ch. 47 ................................................................................................... 6

10 U.S.C. § 532 ........................................................................................................... 3, 12

10 U.S.C. § 616 ............................................................................................................... 13

10 U.S.C. § 802 .......................................................................................................... 6, 15

10 U.S.C. §§ 816-21 ........................................................................................................ 6

10 U.S.C. § 817 ................................................................................................................. 6

10 U.S.C. § 851 ............................................................................................................... 25

10 U.S.C. § 856 ................................................................................................................. 6

10 U.S.C. § 1552 ......................................................................................................... 6, 11

10 U.S.C. § 7011 ............................................................................................................... 2

10 U.S.C. § 7013 ............................................................................................................... 2

10 U.S.C. § 8011 ............................................................................................................... 2

10 U.S.C. § 8013 ............................................................................................................... 2

10 U.S.C. § 9011 ............................................................................................................... 2

10 U.S.C. § 9013 ..................................................................................................... 2, 12, 13

10 U.S.C. § 9081 ............................................................................................................... 2

10 U.S.C. § 9233 ............................................................................................................... 3

10 U.S.C. § 10202 ....................................................................................................... 3, 13

10 U.S.C. § 12201 ................................................................................................ 3, 4, 12, 13

10 U.S.C. § 12641 ................................................................................................ 3, 4, 12, 13

10 U.S.C. § 12642 ............................................................................................................. 3

10 U.S.C. § 14107 ............................................................................................................. 5

10 U.S.C. § 14108 ....................................................................................................... 13, 14

42 U.S.C. §§ 2000bb *et seq.* ...................................................................................... 28

42 U.S.C. § 2000bb-1 ..................................................................................................... 28

**RULES**

Fed. R. Civ. P. 12 ................................................................................................................. 10

**OTHER AUTHORITIES**

Cong. Rsch. Serv., Defense Primer: Reserve Forces (updated Jan. 17, 2023),
    https://crsreports.congress.gov/product/pdf/IF/IF10540 ........................................................... 3

David A. Schlueter, Military Criminal Justice: Practice and Procedure § 1–7
    (Matthew Bender & Co. 2023) ...................................................................................... 6

## INTRODUCTION

This case concerns the Air Force's decision to issue an administrative censure to Plaintiff, Major Jace Yarbrough, in connection with a speech he gave, in-uniform, at a military retirement ceremony, and surrounded by other servicemembers.   During his remarks, Plaintiff harshly criticized the military as "politicized" and breeding "incompetence and cowardice," worried that military leadership had been "capture[d]" by a "radical political faction," and dismissed military training as "a thinly veiled flex of political power."   Plaintiff has challenged the Air Force's decision to issue an administrative Letter of Admonishment (LOA), but all his claims should be dismissed.

As an initial matter, Plaintiff has not appealed to the Air Force Board for the Correction of Military Records, and so his claims should all be dismissed for a failure to exhaust.

But Plaintiff's claims also fail on the merits.  Plaintiff asserts that the Secretary of the Air Force lacks the authority to discipline him (via subordinate commanders and supervisors). Plaintiff is wrong.  The Secretary's broad statutory responsibility for "all affairs" of the Air Force, as well as the Secretary's specific responsibilities to prescribe standards for the appointment, retention, and promotion of officers, encompass the authority to establish an administrative discipline system covering Plaintiff's circumstances here.  Plaintiff's First Amendment freedom of speech claim fails because Supreme Court precedent authorizes the military to restrict speech that, like Plaintiff's here, the military reasonably identifies as a threat to the obedience, unity, and commitment necessary for military effectiveness.  Plaintiff's freedom of religion claim fails for similar reasons: courts owe significant deference to military authorities' professional decisions to limit religious rights in appropriate contexts, and given the content of Plaintiff's remarks, the Air Force's decision to discipline him met the applicable relaxed standard.  Plaintiff's claim that the LOA was inconsistent with other military regulations that protect servicemembers' religious and expressive rights likewise fails because in fact those regulations permit the discipline afforded under the circumstances here.  Plaintiff's claim that the LOA was arbitrary and capricious fails because the shortcomings that Plaintiff alleges in the Air Force's decision-making process do not

plausibly demonstrate that either the process or the Air Force's decision are unreasonable.  And finally, Plaintiff's claim under the Religious Freedom Restoration Act (RFRA) also fails, both because Plaintiff has not plausibly alleged that his religious exercise was burdened by his discipline for criticizing the military and its training and because, in any event, the admonishment he received satisfies strict scrutiny.

## STATUTORY AND REGULATORY BACKGROUND

### I.     The Structure of the United States Military

The United States military is led on a day-to-day basis by the Secretary of Defense, and is divided into three Departments, each of which is led by that Department's individual Secretary. *See* 10 U.S.C. § 7011 (Secretary of the Army), § 8011 (Secretary of the Navy), § 9011 (Secretary of the Air Force).[1]

Each Department's Secretary is "responsible to the Secretary of Defense for . . . the functioning and efficacy of [their] Department" and for "the formulation of policies and programs . . . that are fully consistent with national security objectives and policies established by the President or the Secretary of Defense."  *Id.* § 9013(c)(1), (2) (Air Force); *see also id.* § 7013(c)(1), (2) (Army); *id.* § 8013(c)(1), (2) (Navy).  Each Secretary is also "responsible for, and has the authority necessary to conduct, all affairs of the[ir] Department . . . including," among other functions, "[r]ecruiting," [t]raining," "[a]dministering (including the morale and welfare of personnel)," and [m]aintaining" their respective Department.  *Id.* § 9013(b) (Air Force); *see also* § 7013(b) (Army); § 8013(b) (Navy).

To carry out their responsibilities, each Secretary, including the Secretary of the Air Force, "may . . . prescribe regulations to carry out his functions, powers, and duties under this title."  *Id.* § 9013(g); *see also id.* § 7013(g) (Army); *id.* § 7013(g) (Navy).  Congress has also required the Department Secretaries to issue additional regulations governing servicemembers' conduct, qualifications, and promotions.  In particular, the Department Secretaries must "prescribe physical, mental, moral, professional, and age qualifications for the appointment of persons as Reserves of

---

[1] The Space Force is organized "within the Department of the Air Force."  10 U.S.C. § 9081.

the armed forces under [their] jurisdiction," *id.* § 12201(b), must "by regulation, prescribe . . . standards and qualifications for the retention and promotion of members of the reserve components under his jurisdiction," and correspondingly must prescribe "equitable procedures for the periodic determination of the compliance of each such Reserve with those standards and qualifications," *id.* § 12641(a).

Many individual military servicemembers are part of the military's "regular components," while others are in one of the military's "reserve components." The reserve components are called upon to "provide trained units and qualified persons available for active duty in the armed forces, in time of war or national emergency," and "fill the needs" of the regular "armed forces" when the regular armed forces need "more units and persons . . . than are in the regular components." *Id.* § 10202. Servicemembers in the military's regular components are in the military full-time, but most servicemembers in a reserve component serve for only part of the year, typically "one weekend a month and two weeks a year." Cong. Rsch. Serv., Defense Primer: Reserve Forces at 2 (updated Jan. 17, 2023), https://crsreports.congress.gov/product/pdf/IF/IF10540.

## II.    Military Discipline

The privilege of serving as an officer in the United States military is limited by statute to individuals who are "citizen[s] of the United States," "of good moral character," are "physically qualified for active service," and have "such other special qualifications as the Secretary of the military department concerned may prescribe by regulation." 10 U.S.C. § 532(a).

In the Air Force and Space Force in particular, "[a]ll commanding officers and others in authority . . . are required" to "show in themselves a good example of virtue, honor, patriotism, and subordination," to "guard against and suppress all dissolute and immoral practices," and to "take all necessary and proper measures, under the laws, regulations, and customs of the Air Force or the Space Force, respectively, to promote and safeguard the morale, the physical well-being, and the general welfare of the officers and enlisted persons under their command or charge." *Id.* § 9233. Similarly, reserve officers must also "conform to such other standards and qualifications as the Secretary [of the officer's Department] may prescribe." *Id.* § 12642(a).

To ensure that servicemembers meet Congress's high standards, military servicemembers are subject to two sets of discipline: administrative discipline under Departmental regulation and criminal discipline under the UCMJ.  Administrative discipline is handled, per Congress's instruction, by the three Department Secretaries.  To fulfill his statutory obligations to set the "qualifications" for the "appointment," "retention and promotion" of the members of the Air Force and Space Force reserve, *id.* §§ 12201(b), 12641(a), the Secretary of the Air Force has issued a series of regulations that set substantive standards for the conduct of Air Force servicemembers, including reservists.  For instance, the Secretary has issued regulations that govern Air Force servicemember's conduct in areas including political activities, *see* Air Force Instruction 51-508, *Political Activities, Free Speech and Freedom of Assembly of Air Force Personnel* (Oct. 12, 2018), DEX 1 ("AFI 51-508"), *repealed and superseded* by Department of the Air Force Instruction 51-508, *Political Activities, Free Speech and Freedom of Assembly* (Mar. 24, 2023); Air Force Instruction 1-1, *Air Force Standards* (Aug. 7, 2012), DEX 2 ("AFI 1-1"), § 2.13; the appearance and appropriate wearing of Air Force uniforms, *see* AFI 51-508, § 2.4.2; AFI 1-1, Chapter 3; the use of social media, *see* AFI 1-1, § 2.15; professional relationships, *see* AFI 1-1, § 2.2; and drug and alcohol abuse, *see* AFI 1-1, §§ 2.6-2.7.

The Secretary has also issued regulations setting out the policies and procedures for imposing administrative discipline on those who violate these substantive rules.  The goal of the Air Force's administrative discipline system is to "improve, correct, and instruct subordinates who violate established Air Force standards whether on or off duty," Air Force Instruction 36-2907, *Adverse Administrative Actions* (May 22, 2020), DEX 3 ("AFI 36-2907"), § 1.1, *superseded by* Department of the Air Force Instruction 36-2907, *Adverse Administrative Actions* (Oct. 14, 2022), DEX 4 ("DAFI 36-2907") and the system "applies to all Department of the Air Force [] civilian employees and uniformed members of the United States Space Force [], the Regular Air Force [], the Air Force Reserve [], to include the retired reserve, and the Air National Guard []," Air Force Policy Directive 36-29, *Military Standards* (Apr. 11, 2019) DEX 5 ("AFPD 36-29") at 1–2, *superseded by* Air Force Policy Directive 36-29, *Military Standards* (Jan. 24, 2023); *see also* AFI

4

36-2907 at 1.  Consistent with that broad scope, the Air Force has authorized "administrative counseling, admonishment, and reprimands" to both servicemembers on active duty and "[Air Reserve Component] Airmen who commit an offense while in civilian status." *Id.* § 2.1.  Superior officers should "routinely counsel Airmen either verbally or in writing"; if in writing, a superior can issue, in order of severity, a Letter of Counseling, a Letter of Admonishment, or a Letter of Reprimand, each of which is an "[a]dministrative censure for violation of standards." *Id.* §§ 2.3, 2.3.1-2.3.5.  The regulations, however, nowhere require commanders to issue administrative censures in any specific case, and so superior officers retain discretion about when to issue administrative censures.  Officers issuing a censure use the "preponderance of the evidence" standard, which regulations specify must be determined not "by the number of witnesses or exhibits, but by all the evidence" taken together. *Id.* §§ 2.2, 2.2.1.

Administrative censures are not criminal actions and are not punishable by punitive actions such as confinement or fines.  Instead, administrative censures are typically filed in the servicemember's personnel file, *see id.* § 2.4.5.1, and may be considered by promotion boards when servicemembers are up for promotion,[2] *see* 10 U.S.C. § 14107(a)(2)(A).

Any Air Force servicemember who receives an administrative censure has an opportunity to challenge the censure through an established process that includes the right to administrative appeal.  Active duty servicemembers have 3 days in which to initiate a challenge, whereas "[Air Reserve Component] members not in an active duty status . . . have 45 calendar days." AFI 36-2907, § 2.4.2.4.  If the servicemember challenges the censure, the Air Force must "consider[] any comments submitted" by the servicemember and then decide on a "final disposition," either within

---

[2] The Army and the Navy have similar systems of administrative discipline that authorize the placement of non-punitive sanctions in servicemember's personnel files.  *See* Army Regulation 600-37, Unfavorable Information (Oct. 2, 2020), DEX 6 ("AR 600-37") § 3.5  (authorizing the "[f]iling of nonpunitive administrative memoranda of reprimand, admonition, or censure" in "the performance portion of the [Army Military Human Resource Record]"); Navy Judge Advocate General's Manual (Jan. 10, 2021), DEX 7 § 0105(b)(1), (2) (providing that a "[n]onpunitive censure or letter of instruction" "is not punishment" but "conveys necessary information to remedy a deficiency in conduct or in the performance of duty" and "may be referenced as an adverse matter in a fitness report or evaluation").

3 days for active-duty members or within 45 days for "[Air Reserve Component] members not in an active duty status." *Id.* § 2.4.3.   If a servicemember is dissatisfied with the determination resulting from this initial appeal process, they may appeal to additional officers "in the [servicemember's] current chain of command and equal or senior in grade to the initial imposing authority" and ask them to rescind the censure. *See id.* § 2.4.6.2.2.   If still unsuccessful, the servicemember may appeal to the Air Force Board for the Correction of Military Records, a body that "may correct any military record of the [Air Force] when the [Board] considers it necessary to correct an error or remove an injustice."  10 U.S.C. § 1552(a)(1).

The UCMJ, set out in 10 U.S.C. Ch. 47, provides a set of substantive rules that govern servicemembers' conduct, *see, e.g.*, *id.* § 817, authorizes trial by court martial to those who violate those rules, *see id.* §§ 816–21, and imposes punishments including "dismissal or dishonorable discharge" from the military and "confinement" for periods up to "life without the eligibility of parole," *see id.* § 856.   Importantly, because courts martial impose criminal discipline, "[t]he procedural protections afforded to a service member" in a court martial "are 'virtually the same' as those given in a civilian criminal proceeding."  *Ortiz v. United States*, 138 S. Ct. 2165, 2174 (2018) (quoting David A. Schlueter, Military Criminal Justice: Practice and Procedure § 1–7 (Matthew Bender & Co. 2023)).   UCMJ jurisdiction is limited, however, to "[m]embers of a regular component of the armed forces" and certain other specified groups.  10 U.S.C. § 802(a)(1). As relevant here, "members of a reserve component" are subject to the UCMJ only when "lawfully called or ordered into, or to duty in or for training," "[w]hile on inactive-duty training," while traveling "to or from" inactive-duty training, or in brief breaks between periods of inactive-duty training. *See id.* § 802(a)(1), (3).

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Jace Yarbrough is a Major in the United States Air Force Reserve. Compl. ¶¶ 4, 5.  He was an active-duty officer in the Air Force between 2011 and 2015 and has served as a reservist since 2015.  *Id.* ¶ 24.

In June 2021, Plaintiff delivered a speech at a friend's (Senior Master Sergeant (SMSgt) Fish's) military retirement ceremony. *Id.* ¶¶ 72, 89. The ceremony was held in Pearl Harbor, Hawaii, at the Battleship Missouri Memorial, a monument to a World War II battleship that is operated by a non-profit organization, open to the public, and the site of frequent military ceremonies and public events. *Id.* ¶¶ 80-82. Also attending were members of SMSgt Fish's family, several of SMSgt Fish's other friends from the military, Plaintiff and his family, and other members of the military including SMSgt Fish's commanding officer. *Id.* ¶ 84. Several other members of the public walked by over the course of the speech. *See* Letter of Admonishment, DEX 8 ("LOA"), Ex. D, at 6, 8.

Plaintiff's speech covered a variety of topics. Plaintiff praised SMSgt Fish and his wife, and summarized some of SMSgt Fish's accomplishments from his time in the military. *Id.* Ex. A, at 1-5.[3] Towards the end of Plaintiff's speech, Plaintiff told those assembled at the retirement ceremony that "[t]he Air Force and the wider DoD [that is, the Department of Defense,] are under threat, not only from without, but from within." *Id.* at 5. "Over the last decade," Plaintiff said, "the totalizing claims of a radical political faction within our wider culture have broken into our military" to "capture our top brass." *Id.* at 5, 6. The result, according to Plaintiff, was that "[o]ur [military] service has been politicized" and has begun "breeding . . . incompetence and cowardice." *Id.* This "faction," Plaintiff said, enforce "compliance with the party message," and "cow their opponents into participation in their dishonesty." *Id.* at 6. The "awful dynamic" that Plaintiff described, he said, "has become a part of the DoD's culture," such that "the recent DOD-wide extremism training" was in fact "a thinly veiled flex of political power." *Id.*

Plaintiff next quoted a play authored by Alexander Solzhenitsyn, a Soviet dissident, and suggested that Solzhenitsyn's teachings indicated that the proper response to what Plaintiff

---

[3] The Court may properly take judicial notice of the text of Plaintiff's speech, as well as other documents attached as exhibits to this motion to dismiss. Plaintiff referred to these documents in his complaint (and in many cases directly quoted them), and the documents are central to his claim; they may thus be considered at this stage. *See Polnac v. City of Sulphur Springs*, 555 F. Supp. 3d 309, 323 (E.D. Tex. 2021) (Mazzant, J.).

believed was happening in the Air Force was to challenge what was happening, and to "let the lie come, but not through me."  *Id.* at 7. Throughout his remarks, Plaintiff "wore his Air Force uniform," though he was not on active duty at the time.  Compl. ¶¶ 85-86.

One of the servicemembers present for Plaintiff's speech filed a complaint against him, and the Air Force accordingly opened an investigation.  *Id.* ¶¶ 103–05.  As part of that investigation, the Air Force submitted a series of written questions to Plaintiff, to which he responded, *see* LOA, Ex. B, took statements from witnesses who attended the retirement ceremony (excerpts of which were provided to Plaintiff), *see* Compl. ¶ 106; LOA, Ex. C, and obtained from Plaintiff a complete text of his speech, *see* LOA, Ex. A.

Based on the information gathered during the investigation, the Air Force issued Plaintiff a Letter of Admonishment.  The LOA noted that Plaintiff "delivered a speech in uniform during a military retirement ceremony . . .  in a public setting," and cited several excerpts from Plaintiff's speech.  LOA at 1.  In particular, the LOA quoted Plaintiff as saying that "radical political factions" were present in the military, that the military is fostering a culture of "incompetence and cowardice," and that DOD-wide extremism training was a "thinly veiled flex of political power." *Id.*  The LOA noted that "[m]ilitary members are to remain apolitical and must respect the chain of command," and that Plaintiff's remarks were "insubordinate, disrespectful, and unbecoming for an officer in the military."  *Id.*  Though the LOA acknowledged that "[a]s a military member [Plaintiff has] the right and duty as an American citizen to voice [his] opinions concerning political matters," it observed that Plaintiff "cannot imply those beliefs are representative of the Air Force, and [his] statements cannot be contemptuous."  *Id.*  In accordance with AFI 36-2907, § 2.4.2.4, the LOA gave Plaintiff "45 calendar days" to respond because Plaintiff was "not in an active duty status" when the LOA was issued.

Plaintiff, through counsel, timely appealed the LOA, arguing that it should be rescinded because, in Plaintiff's view, the Air Force cannot discipline off-duty reservists, the LOA violated Plaintiff's "right of speech," and Plaintiff's speech "was apolitical."  Administrative Appeal Communications, DEX 9 ("Appeal Communications"), at 2, 3.  The Air Force rejected Plaintiff's

five appeals, which he pursued up his chain of command to the Chief of Space Operations, arguing each time that the Air Force cannot discipline off-duty reservists and the LOA violated Plaintiff's free speech rights.  *See generally id.*  The Air Force responded to each appeal, explaining its position that the Air Force can discipline off-duty reservists and that the LOA was consistent with the limitations on Plaintiff's right to free speech while a member of the armed forces. *See id.* at 5, 10, 16, 23, 30.

After the Director of Military Justice and Discipline at the Air Force Judge Advocate General's Department (who responded on behalf of the Chief of Space Operations) denied Plaintiff's request to rescind the LOA, *see* Appeal Communications at 30, Plaintiff filed his Complaint.  *See generally* Compl.  Plaintiff's claims mirror several of the arguments that he had raised in his appeals to the Air Force, including that the Air Force cannot discipline off-duty reservists and that the LOA violated Plaintiff's right to free speech.  *See id.* ¶¶ 129–47, 181–208. Plaintiff also claims that the LOA was "arbitrary and capricious," *see id.* ¶¶ 222–33; that the LOA violated the Air Force's own regulations, *see id.* ¶¶ 209–21; and that the LOA burdened his freedom of religion under both the First Amendment and the Religious Freedom Restoration Act, *see id.* ¶¶ 148–80.

## STATEMENT OF THE ISSUES

1.  Should this case be dismissed because Plaintiff "failed to exhaust available service-connected remedies," *Crawford v. Tex. Army Nat'l. Guard*, 794 F.2d 1034, 1036 (5th Cir. 1986), by declining to appeal his Letter of Admonishment to the Air Force Board for Corrections of Military Records?

2.  Has Plaintiff plausibly alleged that the Air Force lacks statutory authority to impose administrative discipline on reservists for misconduct that occurs while not on active duty?

3.  Has Plaintiff plausibly alleged that the Letter of Admonishment violates the Free Speech Clause of the First Amendment?

4.  Has Plaintiff plausibly alleged that the Letter of Admonishment violates the Free Exercise Clause of the First Amendment?

5.  Has Plaintiff plausibly alleged that the Letter of Admonishment was inconsistent with other Air Force and Department of Defense regulations?

6.  Has Plaintiff plausibly alleged that the Air Force's decision to issue the Letter of Admonishment was arbitrary and capricious?

7.  Has Plaintiff plausibly alleged that the Letter of Admonishment violates the Religious Freedom Restoration Act?

## STANDARDS OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) tests the court's subject matter jurisdiction.  The party asserting subject matter jurisdiction bears the burden of proof for a Rule 12(b)(1) motion to dismiss.  *See Willoughby v. United States*, 730 F.3d 476, 479 (5th Cir. 2013).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint.  To survive such a motion, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In assessing a Rule 12(b)(6) motion, the Court must consider all well-pled allegations in a complaint as true and view the complaint in the light most favorable to the plaintiff. *See Albright v. Oliver*, 510 U.S. 266, 268 (1994).  However, a Court need not take as true "conclusory allegations or legal conclusions masquerading as factual allegations." *Fernandez–Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993).  And where, as here, a court "may . . . consider documents that a defendant attaches to a motion to dismiss," if the "exhibit instead contradicts the allegation[s], the exhibit and not the allegation controls." *Sligh v. City of Conroe*, 87 F.4th 290, 297, 298 (5th Cir. 2023) (quoting *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 766 (5th Cir. 2016); *United States v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004)).

## ARGUMENT

### I.  Plaintiff's Complaint Should Be Dismissed Because Plaintiff Has Not Exhausted His Administrative Remedies

"It is basic to military claims that [a] petitioner must exhaust her military remedies before seeking federal court intervention.  This requirement is premised upon principles of comity, the

need to raise an army speedily and efficiently, and the specialized expertise of military institutions with respect to its internal affairs." *Lawrence v. McCarthy*, 344 F.3d 467, 469–70 (5th Cir. 2003) (citation omitted); *see also Hodges v. Callaway*, 499 F.2d 417, 419–20 (5th Cir. 1974).  Plaintiff here has not exhausted his military remedies, and this case's unusual facts and posture give the Court every reason to follow the Fifth Circuit's longstanding acknowledgement that servicemembers challenging military discipline should exhaust their military remedies.

Plaintiff has not yet taken the final step in the appeal process for military discipline: a petition to the Air Force Board for Correction of Military Records.  That Board "may correct any military record of the [Air Force,]" including by removing an LOA from a servicemember's personnel files, "when the [Board] considers it necessary to correct an error or remove an injustice."  10 U.S.C. § 1552(a)(1).

Here, Plaintiff never raised with the agency most of the claims he now brings, so the agency has never had a chance to address whether the LOA should have been amended or rescinded in light of these claims.  *See, e.g.*, Appeal Communications at 11–15 (only challenging the LOA as exceeding the scope of the Air Force's jurisdiction and violating Plaintiff's free speech rights).  If Plaintiff had petitioned the Board and included the claims he has raised here, the Air Force would have responded to all of Plaintiff's arguments and issued a written opinion on the issues.  The absence of such a decision underscores the importance of exhaustion here as the Air Force has not yet had an opportunity to address multiple significant claims concerning the reasonableness of the Air Force's decision-making process, *see, e.g.*, Compl. ¶¶ 175–77, 228, that Plaintiff is now raising for the first time.

Accordingly, Plaintiff's claims should be dismissed because he "failed to exhaust his administrative remedy before the Board for Correction of [Air Force] Records."  *Strickland v. Danzig*, 235 F.3d 1339 (5th Cir. 2000) (per curiam) (unpublished); *see also Crawford*, 794 F.2d at 1035 (affirming the dismissal of appellants' claims because they "failed to exhaust available service-connected remedies by appealing to the Army Board for the Correction of Military Records").

11

II.   **Plaintiffs' Complaint Should Be Dismissed for Failure to State a Claim**

    A.  **Plaintiff Has Failed to State a Claim Under the APA (Claims One, Three, Four, Five, and Six)**

        1.  **Plaintiff Has Failed to Plausibly Allege that the Air Force Lacks Statutory Authority to Administratively Discipline Reservists Not on Active-Duty (Claim One)**

Plaintiff's first claim is that the LOA exceed the Air Force's statutory authority.  Not so. As Plaintiff concedes, AFI 36-2907 § 2.2 plainly authorized the administrative discipline that Plaintiff received.  *See* Compl. ¶ 116.  And the Air Force's issuance of AFI 36-2907 derives from both the Secretary's statutory responsibilities and the policies and purposes underlying military discipline.

Congress has given the Secretary comprehensive, express statutory authority and responsibility over the Air Force.  The Secretary is "responsible to the Secretary of Defense for . . . the functioning and efficiency of the Department of the Air Force," and is specifically "responsible for, and has the authority necessary to conduct, *all affairs*" of the Air Force.  10 U.S.C. § 9013(b), (c)(1) (emphasis added).   More specifically, the Secretary is "responsible for" Air Force "functions" including "[r]ecruiting," [t]raining," "[a]dministering (including the morale and welfare of personnel)," and [m]aintaining" the Air Force.  *See id.* § 9013(b).  Consistent with these responsibilities, Congress also authorized the Secretary to "prescribe regulations to carry out his functions, powers, and duties."  *Id.* § 9013(g).

Congress has also required the Secretary to assess Air Force members' qualifications and conduct at every stage of their military careers.  The Secretary "may prescribe by regulation" "special qualifications" for the appointment of Regular officers, *id.* § 532(a)(4); "shall prescribe" the "qualifications" for the initial "appointment" of an officer in the "Reserves" of the Air Force, *id.* § 12201(b); "shall, by regulation, prescribe" the "standards and qualifications for the retention and promotion of members of the reserve components," *id.* § 12641(a), (a)(1); and "shall, by regulation, prescribe . . . procedures" for "periodic determination[s]" that "each such Reserve"

member complies with the "standards and qualifications" that the Secretary has prescribed by regulation, *id.* § 12641(a), (a)(2).

The authority to discipline servicemembers flows from the Secretary's broad authority over the "functioning and efficiency of the Department of the Air Force" and "responsib[ility] for, and . . . authority necessary to conduct, all affairs" of the Air Force. 10 U.S.C. § 9013(b), (c)(1). This authority is similarly part-and-parcel of the Secretary's specific obligations with respect to "recruiting," "training," "maintaining," and "[a]dministering (including the morale and welfare of personnel)" the Air Force, *id.* § 9013(b)(1), and the Secretary's responsibility to, "by regulation, prescribe" "standards and qualifications" for the "appointment," "retention," and "promotion" of officers, as well as to prescribe "procedures" for "periodic determination[s]" that servicemembers comply with those standards. *Id.* §§ 12201(b); 12641(a)(1), (a)(2).

Consistent with these statutory requirements, the Secretary has by regulation established a "policy for appropriate standards of conduct" by servicemembers. AFPD 36-29 at 1. This policy "ensure[s] members meet their personal, professional, and family-care responsibilities," "applies to all Department of the Air Force [] civilian employees and uniformed members of the United States Space Force [], the Regular Air Force [], the Air Force Reserve [], to include the retired reserve, and the Air National Guard []," *id.* at 1–2, and was "implement[ed]" by AFI 36-2907, the very regulation that Plaintiff challenges here, which provides for "[a]dverse administrative actions . . . to improve, correct, and instruct subordinates who violate established Air Force standards whether on or off duty," AFI 36-2907 § 1.1.

The Air Force's system of administrative discipline extends to conduct of reservists. The Reserves are meant to "provide trained units and qualified persons available for active duty . . . in time of war or national emergency," and the Reserves thus "fill the needs" of the regular "armed forces" when necessary, on equal footing with the regular forces. 10 U.S.C. § 10202. Congress thus holds officers in the Reserves to the same standard to which it holds officers in the regular armed forces, *compare id.* § 616 (setting out the requirements for regular officer promotions), *with id.* § 14108 (setting out identical requirements for the promotions of reserve officers); *see also id.*

13

§ 14108(b)(3) (limiting reserve officer promotions to those "best qualified for promotion . . . consistent with the requirement of exemplary conduct set forth in [*id.* c 9233, which sets out the general requirements of conduct for "[a]ll commanding officers and others in authority in the Air Force"]).

Misconduct by servicemembers, even when they are not on active duty, may reflect poorly on the military as an institution and may affect the servicemember's ability to perform their official duties. "[F]or military personnel, the term 'workplace' is an expansive term that may include 'off-duty' conduct, 24 hours a day." *United States v. Brown*, 55 M.J. 375, 384 (C.A.A.F. 2001). Consequently, Department of Defense-wide regulations also limit servicemembers' conduct even when they are not on active duty. *See, e.g.*, Department of Defense Directive 1344.10, Political Activities by Members of the Armed Forces (Feb. 19, 2008), DEX 10 ("DoDD 1344.10"), § 4 (limiting the political activities of "members of the Armed Forces . . . including members on active duty[ and] *members of the Reserve Components not on active duty*" (emphasis added)). The Air Force's system of administrative discipline takes the same approach and extends to some conduct by officers—including officers in the Reserve—even when they are not on active duty. For instance, Air Force regulations impose "certain restrictions" on political activities by "*members of the Reserve Component, even when not on active duty*," AFI 51-508, § 2.1.3 (emphasis added); prohibit "personal commercial solicitation or sale to any military personnel junior in rank or grade *at any time—on or off-duty, in or out of uniform*," AFI 1-1, § 2.3.4.1 (emphasis added); limit "personal relationships" between "[o]fficers and enlisted members . . . *whether on or off-duty*," *id.* § 2.2.3 (emphasis added); and provide that servicemembers' "use of alcohol must not adversely affect [their] duty performance or [their] *conduct on or off-duty*," *id.* § 2.7 (emphasis added). Naturally, Air Force servicemembers who break these rules are subject to administrative discipline. *See* AFI 36-2907, § 2.1.

Within this context, the Secretary's decision to authorize administrative discipline for reservists "who commit an offense while in civilian status," *id.*, is appropriate and well within his authority. Reservists, like servicemembers in the regular Air Force, may be determined to have

committed an administrative offense while not on active duty, which for a reservist includes their time on civilian status.  Indeed, both Air Force regulations and DoD regulations expressly contemplate that situation.  *See, e.g.*, AFI 51-508, § 2.1.3 (imposing restrictions on political activity by "members of the Reserve Component, even when not on active duty"); DoDD 1344.10, §§ 4, 4.1.4 (same).

None of the allegations in Plaintiff's Complaint undercut the authority of the Air Force to issue the LOA.  For example, Plaintiff alleges that the UCMJ gives the Air Force jurisdiction "only if a reservist is on active duty, participating in inactive-duty training, or performing military duties while receiving military pay or allowances and submitting voluntarily to military authority." Compl. ¶ 138 (citing 10 U.S.C. § 802).  But the statutes governing the UCMJ are inapplicable: Plaintiff was given administrative discipline under Air Force regulations, not criminal discipline under the UCMJ, and the military's "administrative [procedures] are not criminal procedures." *Williams v. Roche*, 468 F. Supp. 2d 836, 849 (E.D. La. 2007) (quoting *Weaver v. United States*, 46 Fed. Cl. 69, 78 (2000).  The UCMJ's jurisdictional limitations are thus irrelevant here.

Plaintiff next asserts that the Air Force's issuance of the LOA is inconsistent with its "own admission" that one of its regulations did not apply to off-duty conduct, relying on *Wilson v. James*, 139 F. Supp. 3d 410, 429 (D.D.C. 2015), in which the Air Force accepted that the relevant provisions of AFI 1-1 did not bar the specific conduct at issue therein.  *See* Compl. ¶ 143.  But contrary to Plaintiff's assertion, Plaintiff's claim here concerns a totally different regulation, AFI 36-2907, § 2.1, which by its own terms expressly *does* apply to off-duty reservists.  So the Air Force's acknowledgement in *Wilson* that AFI 1-1 may, in certain cases, not apply to off-duty conduct does not call into question either that AFI 36-2907 applies, by its terms, to Plaintiff's conduct or that the Secretary has the authority to issue AFI 36-2907.

Plaintiff also refers, in Compl. ¶ 144, to a decision by the Department of the Army Suitability Evaluation Board that voided a Memorandum of Reprimand issued to Captain Alan Kennedy, a Colorado national guardsman.  *See In re Kennedy*, Record of Proceedings, Dept. of the Army: Suitability Evaluation Board, Docket No. AR20210006717 (Dec. 14, 2021), DEX 11 at

2, 10.  But like *Wilson*, *Kennedy* involved different regulations than the one at issue here.  *See id.* at 2 (discussing AR 600-37 and Department of Defense Instruction 1325.06, *Handling Dissident and Protest Activities Among Members of the Armed Forces* (Feb. 22, 2012), DEX 12 ("DoDI 1325.06 2012"), *superseded by* Department of Defense Instruction 1325.06, *Handling Protest, Extremist, and Criminal Gang Activities Among Members of the Armed Forces* (Dec. 20, 2021), DEX 13 ("DoDI 1325.06 2021")).  Further, Captain Kennedy was in a State national guard, not the federal reserve, and *Kennedy*'s reasoning accordingly focused on how the regulation at issue "does not apply to National Guard Servicemembers unless they are serving in . . . federal active duty status."  *Id.* at 9.  So *Kennedy* does not support Plaintiff's claim in this case, which concerns a regulation that Plaintiff concedes applies to him, Compl. ¶ 136, and where Plaintiff serves in the "United States Air Force Reserve" rather than the national guard of one of the several states, *id.* ¶ 5.

To summarize, Congress required the Secretary to issue regulations setting standards and qualifications for officer conduct, appointment, promotion, and retention; the Secretary has established both substantive standards of conduct and a process for issuing administrative discipline; and the Secretary reasonably decided to prohibit some off-duty misconduct.  Based on the allegations in the Complaint, Plaintiff has not stated a plausible claim that the Secretary has exceeded his authority.

### 2. Plaintiff Has Failed to Plausibly Allege that the LOA Violates His First Amendment Right to Freedom of Speech (Claim Four)

Plaintiff also fails to plausibly allege that the LOA was "contrary to constitutional right," 5 U.S.C. § 706(2)(B), because the LOA allegedly violated the Free Speech Clause of the First Amendment.  "[T]o accomplish its mission, the military must foster instinctive obedience, unity, commitment, and esprit de corps"; the military therefore "need not encourage debate or tolerate protest to the extent that such tolerance is required of the civilian state by the First Amendment." *U.S. Dep't of Just. v. FLRA*, 955 F.2d 998, 1006 (5th Cir. 1992) (quoting *Goldman v. Weinberger*, 475 U.S. 503, 507 (1986)).  In fact, "[t]he armed forces depend on a command structure that at

times must commit men to combat, not only hazarding their lives but ultimately involving the security of the Nation itself." *Parker v. Levy*, 417 U.S. 733, 759 (1974).  Accordingly, while "[d]isrespectful and contemptuous speech" may be "protected in the civil population," in a military context that speech "may nonetheless undermine the effectiveness of response to command" and thus is "constitutionally unprotected." *Id.*; *see also Priest v. Sec'y of Navy*, 570 F.2d 1013, 1018 (D.C. Cir. 1977) (holding that speech by a servicemember is not "protected by the First Amendment" if the speech "harm[s] responsiveness to command or [] endanger[s] loyalty, discipline, or morale").

Here, Plaintiff's speech is unprotected.  Speech by a servicemember that is directed at the military and "disrespectful or contemptuous . . . can directly undermine the power of command." *United States v. Gray*, 42 C.M.R. 255, 258 (C.M.A. Aug. 28, 1970).  Plaintiff, while in uniform at a military event, criticized the military as "politicized" and full of "incompetence and cowardice," worried that military leadership had been "capture[d]" by a "radical political faction," criticized military training as "a thinly veiled flex of political power," and exhorted his listeners to resist. LOA, Ex. A. at 5, 6.  That fits well within the type of disrespectful and contemptuous speech— directed at his superiors and the military at large—that can "undermine the power of command," *Gray*, 42 C.M.R. at 258, and is thus "constitutionally unprotected." *Parker*, 417 U.S. at 759. Although Plaintiff alleges otherwise, suggesting that his remarks had "no chance of causing prejudice to good order and discipline," Compl. ¶ 195, this allegation is both conclusory and contradicted by the text of his speech, which harshly criticized military policy and leadership, *see* LOA, Ex. A at 5-6, and by Plaintiff's own Complaint, which confirms that Plaintiff spoke in a space open to the public with multiple military servicemembers present, *id.* ¶¶ 82, 84.

It makes no difference whether Plaintiff was in military status during his speech.  As Plaintiff concedes, when he gave his speech he was wearing his military uniform at a "military ceremon[y]" with other military members present.  *Id.* ¶¶ 82, 84, 86.  It is precisely this context— a servicemember in a military uniform, criticizing the military, to members of the military as well as the general public—that makes Plaintiff's speech "undermine the effectiveness of response to

command." *Parker*, 417 U.S. at 759.  Indeed, these circumstances demonstrate the Air Force's rationale for prohibiting servicemembers from wearing their uniforms "[w]hen participating in or attending public political speeches . . . when participation might imply Air Force sanction . . . or if the purpose may be to advocate, express, or approve opposition to the Armed Forces."  AFI 1-1, § 3.4.2.2; *see also* AFI 51-508, § 2.4 ("[A] member of the [Air Force] not on active duty may take [certain political actions] and participate in the activities prohibited [earlier in the regulation], provided the member is not in uniform and does not otherwise act in a manner that could reasonably give rise to the inference or appearance of official sponsorship, approval, or endorsement.").  When a servicemember makes political statements in uniform, the uniform implies that the military endorses those statements, thus threatening the "American constitutional tradition of a politically neutral military establishment." *Greer v. Spock*, 424 U.S. 828, 839 (1976). Indeed, multiple courts have approved military discipline for political activities while in uniform. *See Klingenschmitt v. United States*, 119 Fed. Cl. 163, 193 (2014) (upholding military discipline "based on Navy regulations that prohibit the wearing of a uniform in connection with political activities"), *aff'd*, 623 F. App'x 1013 (Fed. Cir. 2015); *see also Locks v. Laird*, 300 F. Supp. 915, 918 (N.D. Cal. 1969), *aff'd*, 441 F.2d 479 (9th Cir. 1971).

Even if the non-military First Amendment rules governed here, the LOA would still satisfy them.  "[C]ontent-based restrictions on speech" must satisfy strict scrutiny, "which requires the Government to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest.'" *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 171 (2015) (quoting *Ariz. Free Enter. Club's Freedom Club PAC v. Bennett*, 564 U.S. 721, 734 (2011)).  And Plaintiff has not plausibly alleged that the LOA fails this test.  As the Supreme Court has held, "the military must foster instinctive obedience, unity, commitment, and esprit de corps." *Goldman*, 475 U.S. at 507, and must uphold the "American constitutional tradition of a politically neutral military establishment." *Greer*, 424 U.S. at 839.  There is thus a "substantial Government interest . . . in maintaining the respect for duty and discipline so vital to military effectiveness." *Wilson*, 139 F. Supp. 3d at 426 n.5 (quoting *Brown v. Glines*, 444 U.S. 348, 348 (1980)); *see also Rigdon v. Perry*,

962 F. Supp. 150, 162 (D.D.C. 1997) (identifying "good order and discipline" as "compelling governmental interests").  Similarly "compelling" is the governmental interest in a "politically-disinterested military," *Rigdon*, 962 F. Supp. at 162; *see also Greer*, 424 U.S. at 839.  The LOA, issued for statements "insubordinate, disrespectful, and unbecoming for an officer in the military," LOA at 1, plainly supports those interests.

The LOA was also narrowly tailored.  Administrative censures are to be issued "routinely," AFI 36-2907, § 2.3, and a Letter of Admonishment in particular is the second-lowest level of written censure available under Air Force regulations, and "could be used to document a first offense," *id.* § 2.3.4.  Its only automatic consequence is an entry in the servicemember's personnel file, *id.* § 2.4.5.1, and under more recent regulations, in the servicemember's promotion selection record, *see* DAFI 36-2907, § 1.2.8, Attachment 8.  More, the LOA explicitly acknowledged that Plaintiff "ha[s] the right and duty as an American citizen to voice [his] opinions concerning political matters."  LOA at 1.  The LOA noted only that servicemembers have modest guardrails for how to exercise those rights: Plaintiff "cannot imply those beliefs are representative of the Air Force," for instance by being in uniform," and that Plaintiff's "statements cannot be contemptuous."  *Id.*  The LOA thus "was a reasonable exercise of the discretion afforded to the military in matters of good order and discipline."  *Wilson*, 139 F. Supp. 3d at 426 n.5.

### 3.  Plaintiff Has Failed to Plausibly Allege that the LOA Violates His First Amendment Right to Freedom of Religion (Claim Three)

Plaintiff also alleges that the LOA was "contrary to constitutional right," 5 U.S.C. § 706(2)(B), because the LOA violates the First Amendment's guarantee of Freedom of Religion.  Compl. ¶ 163.  "[W]hen evaluating whether military needs justify a particular restriction on religiously motivated conduct, courts must give great deference to the professional judgment of military authorities concerning the relative importance of a particular military interest."  *Goldman*, 475 U.S. at 507.  Judicial review of military rules "challenged on First Amendment grounds is [thus] far more deferential than constitutional review of similar laws or regulations designed for civilian society."  *Id.*  Correspondingly, the Fifth Circuit has confirmed that the military's "need

19

to 'foster instinctive obedience, unity, commitment, and esprit de corps'" justifies a "low threshold of constitutional protection" for First Amendment activities.  *A.A. v. Needville Indep. Sch. Dist.*, 611 F.3d 248, 269–70 (5th Cir. 2010) (quoting *Goldman*, 475 U.S. at 507).

Even accepting that the LOA burdens Plaintiff's religious rights, he has not plausibly alleged that Defendants issued the LOA in violation of the First Amendment.  Again, the "military must foster instinctive obedience, unity, commitment, and esprit de corps," *Dep't of Just.*, 955 F.2d at 1006 (quoting *Goldman*, 475 U.S. at 507)," and the "armed forces depend on a command structure that at times must commit men to combat," *Parker*, 417 U.S. at 759.  Courts must therefore "give great deference to the professional judgment of military authorities concerning the relative importance" of this "military interest," *Goldman*, 475 U.S. at 507, and courts have already confirmed that the military's interest "in maintaining the respect for duty and discipline so vital to military effectiveness" is "substantial," *Wilson*, 139 F. Supp. 3d at 426 n.5 (quoting *Brown*, 444 U.S. at 348).

The LOA supported those interests because Plaintiff's speech, which he gave in uniform and in the presence of other servicemembers, contemptuously criticized the military, its leadership, and its training and thus threatened the "obedience" and "command structure" on which the military depends, and ultimately threatened to "undermine the power of command."  *Gray*, 42 C.M.R. at 258.  The LOA thus easily satisfies the Supreme Court's standard of "deferential . . . constitutional review" for the military branches.  *Goldman*, 475 U.S. at 507.

Plaintiff's complaint ignores the analysis applicable to military discipline, and instead focuses on the stricter Free Exercise Clause standard used in non-military contexts, *see* Compl. ¶¶ 166–78, but he fails to state a claim even under that standard.  As the Supreme Court has held, a "valid and neutral law of general applicability" does not violate the Free Exercise Clause, even if that law burdens religion. *Emp. Div., Dept. of Hum. Res. of Or. v. Smith*, 494 U.S. 872, 879 (1990) (quoting *United States v. Lee*, 455 U.S. 252, 263 n.3 (1982) (Stevens, J., concurring in judgment)). A policy is not neutral if its "object is to infringe upon or restrict practices because of their religious

motivation" and a policy is not "generally applicable" if the law "impose[s] burdens only on conduct motivated by religious belief" in a "selective manner."  *Id.*

Plaintiff has not plausibly alleged that the LOA was based on a government policy that was neutral nor generally applicable.  Plaintiff speculates that the LOA was based on a non-neutral policy because the LOA allegedly targeted his conduct "due to its religious nature," Compl. ¶ 172, but his own Complaint and the LOA's full text rebut this implausible allegation.  As Plaintiff's Complaint explains, the LOA is neutral on its face.  The LOA does not even mention religion or religious exercise, and instead focuses on the non-religious characteristics of Plaintiff's speech: the speech's "contemptuous" and "insubordinate" content.  *Id.* ¶¶ 109–12; *see also* LOA at 1.  Plaintiff nowhere alleges any other "subtle departures from neutrality."  *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah.*, 508 U.S. 520, 534 (1993) (quoting *Gillette v. United States*, 401 U.S. 437, 452 (1971)).  And in fact, Plaintiff never even alleges that the Air Force even knew of Plaintiff's religious motivations at all, either before the Air Force disciplined him or during Plaintiff's administrative appeals.  None Plaintiff's administrative appeals even mentioned Plaintiff's religious motivations, and Plaintiff's complaint does not allege that he filed any request for an administrative accommodation of his religious beliefs.  In sum, the LOA does not mention religion or the free exercise thereof, the LOA offers wholly secular justifications for Plaintiff's discipline, and Plaintiff does not even allege that the Air Force knew of his religious motivations before this lawsuit was filed.  With these details in mind, it is simply implausible that the LOA's "object" was to "restrict" Plaintiff because of his "religious motivation."  *Smith*, 494 U.S. at 879.

Plaintiff similarly fails to adequately allege that either the Air Force's policies on servicemembers' speech or the LOA are not generally applicable in that they "impose burdens only on conduct motivated by religious belief."  *Id.*  Plaintiff alleges that the Air Force's policies are not generally applicable "because Defendants have exempted similarly situated servicemembers engaging in non-religious conduct from discipline."  Compl. ¶ 173.  But this conclusory allegation is insufficient alone to nudge Plaintiff's claim from possible to plausible, and the specific examples that Plaintiff gives all fall short.  Plaintiff's remarks that harshly

criticized the military are plainly not similarly situated to two of his examples—a DoD press release and a tweet from an official DoD Twitter account—which are both officially sanctioned military speech that *defended* the military from criticism.  *See id.* ¶¶ 176, 177.  And as for the other examples, Plaintiff alleges only that the other servicemembers made run-of-the-mill political speech, not that they contemptuously criticized military leadership and training like Plaintiff did here.  *See id.* ¶¶ 174–77, 204.  That distinction—not some hypothetical anti-religious bias—plausibly explains why the other servicemembers faced no discipline.[4]

### 4.  Plaintiff Has Failed to Plausibly Allege that the Letter of Admonishment Was Inconsistent with Air Force Regulations (Claim Five)

Plaintiff also alleges that the LOA was "not in accordance with law," 5 U.S.C. § 706(2)(A), because Plaintiff claims that the LOA is inconsistent with a variety of Air Force and Department of Defense regulations that protect servicemembers' freedoms of religion and speech, *see* Compl. ¶¶ 214–217.  These regulations serve the important function of protecting servicemembers rights, but none are inconsistent with the LOA.

First, Plaintiff cites AFI 1-1, which provides that "[a]ll Airmen are able to choose to practice their particular religion, or subscribe to no religious belief at all" and to "confidently practice [their] own beliefs while respecting others whose viewpoints differ from [their] own." *See* Compl. ¶ 214 (quoting AFI 1-1, § 2.12.1).  But the very next provision cautions that Airmen's "right to practice [their] religious beliefs does not excuse [them] from complying with directives, instructions, and lawful orders."  AFI 1-1, § 2.12.2.  So AFI 1-1 does not provide religious servicemembers with a blanket right to disobey Air Force rules and is thus not inconsistent with the LOA.

Plaintiff next cites Department of Defense Instruction 1300.17, *Religious Liberty in the Military Services* (Sept. 1, 2020), DEX 14 ("DoDI 1300.17"), § 1.2(b), which notes that the DoD will "accommodate individual expressions of sincerely held beliefs (conscience, moral principles, or religious beliefs) which do not have an adverse impact on military readiness, unit cohesion,

---

[4] And even if the LOA were subject to strict scrutiny, it would survive.  *See supra* Section II.A.2.

good order and discipline," and that "[a] Service member's expression of such beliefs may not, in so far as practicable, be used as the basis of any adverse personnel action, discrimination, or denial of promotion, schooling, training, or assignment."  But the Air Force reasonably determined that Plaintiff's in-uniform speech that criticized the military at a military ceremony would have an "adverse impact" on readiness, cohesion, good order, and discipline.  *See supra* Section II.A.2.  So the LOA issued here was not inconsistent with DoDI 1300.17.

Plaintiff also cites DoDI 1325.06 2021, § 3(b), which Plaintiff quotes as stating "[s]ervice member's right of expression should be preserved to the maximum extent possible in accordance with the First Amendment of the Constitution."  Compl. ¶ 216.  In fact, the version of that Instruction in effect at the time the LOA was issued was DoDI 1325.06 2012, which omits any reference to the First Amendment and requires instead that "right of expression should be preserved to the maximum extent possible in accordance with the constitutional and statutory provisions of titles 10 and 18, United States Code."  Plaintiff has not explained how the LOA allegedly contradicts these titles.  And in any event, both DoDI 1325.06 2012, § 3(b), and DoDI 1325.06 2021, § 3(b) only protect the right to free expression "consistent with good order and discipline and the national security."  The Air Force reasonably determined that Plaintiff's speech was not "consistent with good order and discipline," and so the LOA is not inconsistent with either version of DoDI 1325.06.

Finally, Plaintiff notes, *see* Compl. ¶ 217, that AFI 51-508, § 2.3.1 authorizes servicemembers to "express a personal opinion on political candidates and issues, but not as a representative of the AF or DoD."  But that same Instruction provides that servicemembers may not "[p]articipate, while in uniform, in any activity such as unofficial public speeches, interviews, picket lines, marches, rallies or any public demonstration which may imply AF sanction of the cause for which the demonstration or activity is conducted," *id.* § 2.4.1.17, or engage in "[a]ny activity that may be reasonably viewed as directly or indirectly associating the AF or DoD with a partisan political activity or is otherwise contrary to the spirit and intention of this Instruction," *id.*

23

§ 2.4.3.  The Air Force reasonably determined that Plaintiff's speech did not "align and comport with AFI 51-508," LOA at 1, and thus that Instruction is not inconsistent with the LOA.

### 5.  Plaintiff Has Failed to Plausibly Allege that the Letter of Admonishment was Arbitrary or Capricious (Claim Six)

Plaintiff next claims that the LOA was "arbitrary, capricious, [or] an abuse of discretion." Compl. ¶ 224 (quoting 5 U.S.C. § 706(2)(A)).  Claims brought under Section 706(2)(A) are evaluated under a "narrow and highly deferential" standard of review; the Court "cannot substitute [its] judgment for that of the agency" and instead ensures that the agency "reasonably considered the relevant issues."  *Huawei Techs. USA, Inc. v. Fed. Commc'ns Comm'n*, 2 F.4th 421, 434, 449 (5th Cir. 2021).  The LOA easily meets this bar.

Plaintiff raises three claims why the LOA was arbitrary and capricious; none are persuasive.  First, he labels the LOA as "internally inconsistent."  In support, Plaintiff notes that the LOA relied on AFI 36-2907, § 2.1, which used the word "offense."  From this, Plaintiff extrapolates that the LOA thus "suggests the sanctioned conduct by the reservist must reach a level of criminality under the UCMJ," and then alleges that his own "remarks did not . . . rise to the level of a military violation of the UCMJ."[5]  Compl. ¶¶ 225, 227.  But Plaintiff points to no evidence supporting his hypothesis that AFI 36-2907's use of the phrase "offense" creates any link between that Instruction and "criminality under the UCMJ."  Indeed, the whole point of the Air Force's administrative discipline system is to provide an alternative that differs from the UCMJ in key ways, for instance in that the administrative system is "corrective in nature, not punitive."  AFI

---

[5] To the extent this claim "directly challenge[s] whether [Plaintiff's] conduct warranted" the LOA, this claim would be non-justiciable.  *Wilson*, 139 F. Supp. 3d at 431.  Federal court jurisdiction over military discipline is "limited to challenges to procedures—it does not extend to the merits." *Reilly v. Sec'y of the Navy*, 12 F.Supp.3d 125, 140 (D.D.C. 2014); *see also Kreis v. Sec'y of Air Force*, 866 F.2d 1508, 1514 (D.C. Cir. 1989).  Evaluating such a claim would inappropriately "require this court to second-guess the wisdom of a military decision to reprimand Plaintiff," and that claim would thus be "nonjusticiable."  *Wilson*, 139 F. Supp. 3d at 431, 432; *see also Orloff v. Willoughby*, 345 U.S. 83, 94 (1953) ("The military constitutes a specialized community governed by a separate discipline from that of the civilian. Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters.").

36-2907, § 1.1.  Specific provisions of AFI 36-2907 confirm this distinction between the Air Force's system of administrative discipline and the UCMJ.  For instance, Section 2.2, the provision immediately following the one Plaintiff cites, reads: "The Standard of Proof for adverse administrative actions is the 'preponderance of the evidence.'  This standard will be used when evaluating the evidence and every element of the alleged *offenses*." (emphasis added).  Of course, for a court martial to convict a servicemember of "criminality under the UCMJ," the government must prove the servicemember's guilt "beyond a reasonable doubt."  10 U.S.C. § 851; *see also United States v. Czekala*, 42 M.J. 168, 170 (C.A.A.F. 1995).  So because AFI 36-2907, § 2.2 provides that "offenses" may be imposed by the "preponderance of the evidence" rather than "beyond a reasonable doubt," by definition that section confirms that AFI 36-2907 uses the phrase "offense" to refer to conduct not necessarily punishable by a court martial under the UCMJ.  Other sections of AFI 36-2907 likewise confirm that the Instruction uses the phrase "offense" to refer to conduct meriting an administrative response.  *See, e.g.*, *id.* § 2.3.4 (providing that an "[a]dministrative censure . . . could be used to document a first *offense*") (emphasis added).

Second, Plaintiff claims that the LOA was arbitrary and capricious because it was allegedly not based "on a consideration of the relevant factors" and because the Air Force allegedly did not "engage in reasoned decisionmaking."  Compl. ¶ 228.  But he has not adequately pled any shortcomings in Air Force's process, let alone any that cause the LOA to fail the "narrow and highly deferential" review to which it is subject.  *Huawei Techs.*, 2 F.4th 421 at 449.  Plaintiff complains that the Air Force interviewed "only six witnesses at an event with 25 in attendance" and did not "seek to determine whether most of those individuals found his remarks problematic," Compl. ¶ 228.  But Plaintiff cites no authority requiring the Air Force to interview each and every witness or to rest its decision on a straw poll of those present for Plaintiff's speech.

In fact, the Air Force's own regulations instruct that the agency should determine whether discipline is warranted "not . . . by the number of witnesses . . . but by all the evidence" taken together.  AFI 36-2907, § 2.2.1.  And that is precisely what the Air Force did here.  The Air Force considered the actual text of Plaintiff's remarks (which the LOA cited repeatedly), the statements

of six witnesses, and Plaintiff's responses to questions provided to him.  *See* LOA at 1; *id.* Exs. B, D.  This approach was both reasonable and consistent with the Air Force's own regulations.

Plaintiff also alleges that the Air Force "ignored the comments of one witness" who expressed some support for Plaintiff's remarks.  Compl. ¶ 229.  But agencies routinely face conflicting evidence, and so it cannot be "arbitrary" for an agency to reach a conclusion consistent with some but not all of the evidence (not least when, as here, a vast majority of the witnesses and the actual text of Plaintiff's speech support the Air Force's decision).  By Plaintiff's logic, a decision to not issue the LOA would *also* have been arbitrary and capricious for "ignoring the comments" of the five witnesses who criticized Plaintiff's speech.  In any event, the Air Force reasonably considered the text of Plaintiff's speech and the comments of six witnesses in issuing the LOA.  All told, Plaintiff has not plausibly alleged that the Air Force did not give "reasonabl[e] consider[ation to] the relevant issues."  *Huawei Techs.*, 2 F.4th 421 at 449.

Third, Plaintiff alleges that the LOA was arbitrary and capricious because the Air Force has allegedly "exempted similarly situated servicemembers from discipline for publicly engaging in criticism of similar military policies, even while on active duty, and in uniform."  Compl. ¶ 231.  But this claim is flawed for at least four reasons.  First, according to the documents that Plaintiff cites, the servicemembers there each served in other branches under other commanders, and how those commanders exercised their discretion to issue (or not issue) administrative discipline cannot dictate how Plaintiff's commander must exercise his own discretion here.  Second, the Air Force, like other agencies, exercises "prosecutorial discretion" in its enforcement decisions.  *Citizens for Resp. & Ethics in Wash. v. Fed. Election Comm'n*, 993 F.3d 880, 887 (D.C. Cir. 2021).  And Plaintiff here points to no regulation or statute that overcomes the "presumption that agency decisions not to institute proceedings are unreviewable" and "committed to agency discretion." *Heckler v. Chaney*, 470 U.S. 821, 837, 838 (1985).  So the Air Force's unreviewable decision (or, indeed, the unreviewable decision of another commander in another Branch) to exercise "prosecutorial discretion" in other cases cannot render arbitrary and capricious Plaintiff's commander's decision to not exercise that discretion here.  Third, and as explained above, Plaintiff

26

has not plausibly alleged that the other servicemembers were similarly situated.  He alleges that the other servicemembers "publicly engag[ed] in criticism of similar military policies," Compl. ¶ 231, but again, his LOA was not issued for mere criticism of military policy.  The LOA was issued for in-uniform criticism, at a military event, of military leadership, policy, and training, that was "contemptuous," "disrespectful," and "insubordinate."  LOA at 1.  Plaintiff does not allege that the other servicemembers that he identified made similarly contemptuous and insubordinate criticism, and this distinction plausibly explains any difference in discipline.  *See also supra* Section II.A.3.  And fourth, even if it were appropriate to compare an enforcement action with an exercise of prosecutorial discretion, and even if the other servicemembers were similarly situated, at best Plaintiff's argument suggests that the Air Force's previous decisions not to discipline servicemembers were arbitrary and capricious.  His argument casts no doubt on the Air Force's decision to follow its own regulations and discipline him here.

Separately, even if Plaintiff's arbitrary and capricious claim were to succeed, Plaintiff could not obtain the relief he seeks: "an injunction setting aside the LOA; [] a declaration that the LOA was arbitrary, capricious, or an abuse of discretion; and [] a declaration that the military has no future authority to take disciplinary actions against him for his speech done while in civilian status." Compl. ¶ 233.  As an initial matter, "[g]ranting the relief Plaintiff seeks—removal of the LORs from his official record—would require this court to second-guess the wisdom of a military decision to reprimand Plaintiff." *Wilson*, 139 F. Supp. 3d at 432 (citation omitted).  Such direct challenges to "military personnel actions—including promotions, discharges, and discipline— [are] nonjusticiable." *Id.* at 431; *see also Kreis*, 866 F.2d at 1514.  Further, the remedy for Plaintiff's claim that the LOA was arbitrary and capricious under 5 U.S.C. § 706(2)(A) would be to vacate the LOA and "require the Secretary to explain more fully the process by which he reached his assessment," not to enjoin the Air Force from re-issuing the LOA in the future.  *Kreis*, 866 F.2d at 1514; *see also Coal. for Workforce Innovation v. Walsh*, No. 1:21-CV-130, 2022 WL 1073346, at *19 (E.D. Tex. Mar. 14, 2022).

27

**B.  Plaintiff Has Failed to State a Claim Under RFRA (Claim Two)**

Plaintiff has also failed to state a claim under the Religious Freedom Restoration Act, 42 U.S.C. §§ 2000bb, *et seq*.  Under RFRA, the federal government may not "substantially burden" a person's sincere exercise of religion unless that burden satisfies strict scrutiny, in that the burden is "in furtherance of a compelling governmental interest" and is "the least restrictive means of furthering that . . . interest."  *Id.* § 2000bb-1(a), (b).  Here, Plaintiff has failed to adequately allege either that Air Force has substantially burdened his religious exercise or that the LOA fails strict scrutiny.

A government action imposes a "substantial burden" if the action "truly pressures the adherent to significantly modify his religious behavior and significantly violate his religious beliefs."  *Adkins v. Kaspar*, 393 F.3d 559, 570 (5th Cir. 2004).  For at least two reasons, Plaintiff has not adequately alleged that the Air Force has burdened his religious exercise.

First, Plaintiff's religious beliefs were not the cause of his discipline.  As described in Plaintiff's complaint, Plaintiff holds a "faith-based belief" that you should not "forc[e] people to deny such self-evident beliefs" as the beliefs that "boys should not be allowed in girls' locker rooms" and that "men can't birth babies."  Compl. ¶¶ 94, 95.  But the LOA was not issued because Plaintiff holds those beliefs or expressed them during his speech.  The LOA was issued because Plaintiff criticized the military as "politicized" and full of "incompetence and cowardice" and criticized military training as a "thinly veiled flex of political power."  LOA at 1.  So because the LOA was not issued based on Plaintiff's expression of his "religious beliefs", the LOA has done nothing to "pressure[]" Plaintiff to "significantly violate" those beliefs.  *Adkins*, 393 F.3d at 570.

Second, the LOA only limits speech (religious or otherwise) in narrow, specific contexts, and Plaintiff has not alleged that his religion motivates him to speak in those particular contexts.  As many other courts have held, "a restriction on one of a multitude of means . . . is not a substantial burden" under RFRA.  *Henderson v. Kennedy*, 253 F.3d 12, 17 (D.C. Cir. 2001).  In other words, if the government does not restrict the "exclusive medium through which [a plaintiff] could express

his religious views," there is no RFRA violation.  *Mahoney v. Doe*, 642 F.3d 1112, 1120–21 (D.C. Cir. 2011).

Importantly, multiple courts have applied this exact principle to reject RFRA challenges to military discipline.  In *Wilson*, the plaintiff was disciplined "for voicing his views about same-sex marriage, using his military email account, to a senior officer outside his chain of command," but because the discipline "did not bar [the plaintiff] from voicing his opposition to same-sex marriage in other fora or by other means, and certainly not in his private affairs," the discipline "d[id] not rise to a RFRA violation."  139 F. Supp. 3d at 425–26, *aff'd*, 2016 WL 3043746 (D.C. Cir. May 17, 2016).  Similarly, in *Klingenschmitt v. United States* a servicemember was disciplined for "engaging in [certain religious practices] while wearing his uniform," but because the discipline "did not limit [the plaintiff's] right to engage in . . . religious practices" in other contexts, the discipline "did not violate . . . RFRA."  119 Fed Cl. 163, 193 (2014), *aff'd*, 623 F. App'x 1013 (Fed. Cir. 2015).

Applying this principle here, Plaintiff has alleged no substantial burden.  Plaintiff alleges that his speech "was an expression of his religious exercise" because "speaking truth is an essential element of living out his faith."  Compl. ¶ 97.  But Plaintiff was not disciplined for "speaking truth."  He was disciplined because he "cannot imply [his] beliefs are representative of the Air Force, and [his] statements cannot be contemptuous" while speaking in military uniform at a military ceremony.  LOA at 1.  So even under Plaintiff's allegations, the LOA does not prevent Plaintiff from speaking truth "in other fora or by other means," *Wilson*, 139 F. Supp. 3d at 425, nor does it prohibit any "exclusive medium through which [Plaintiff] could express his religious views," *Mahoney*, 642 F.3d at 1120–21.  Plaintiff thus has not alleged that the LOA imposes a substantial burden under RFRA.

Finally, even if Plaintiff had plausibly alleged that the LOA substantially burdened his religious exercise, he has not plausibly alleged that the LOA fails strict scrutiny.  Recall why the LOA was issued: Plaintiff, in military uniform at a public military ceremony, criticized the military as incompetent and cowardly, called the military's leadership "radical" and "politicized," and

dismissed military training as "a thinly veiled flex of political power."  LOA at 1.  As explained above, the Air Force had a compelling governmental interest in disciplining Plaintiff's insubordinate, contemptuous statements, and did so through the LOA in a reasonable, narrowly tailored fashion.[6]  *See supra* Section II.A.2.  The LOA thus "was a reasonable exercise of the discretion afforded to the military in matters of good order and discipline."  *Wilson*, 139 F. Supp. 3d at 426 n.5.

### C.  Plaintiff Has Failed to State a Claim Under the First Amendment (Claim Seven)

For the reasons explained above, Plaintiff fails to state APA claims alleging that the LOA violates his First Amendment rights to Freedom of Religion and Freedom of Speech.  *See supra* Sections II.A.2 and II.A.3.  Plaintiff thus fails to state a claim under the First Amendment for those same two alleged violations.

### <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant the Government's motion and dismiss Plaintiff's Complaint.  The agency and official-capacity defendants respectfully request oral argument on this matter.


Dated:  February 1, 2024                    Respectfully submitted,

                                            BRIAN BOYNTON
                                            Principal Deputy Assistant Attorney General

                                            DAMIEN M. DIGGS
                                            United States Attorney

                                            CARLOTTA P. WELLS
                                            Assistant Director, Federal Programs Branch

---

[6] In fact, if Plaintiff had adequately alleged that the LOA substantially burdened his religious exercise, he would necessarily concede that his religious exercise was the precise things the LOA was issued for: contemptuous, insubordinate speech in a military uniform at a military ceremony. This concession, combined with the military's weighty interests in discipline and good order, make plain that the Air Force's decision to discipline Plaintiff for his speech was consistent both with strict scrutiny and with the First Amendment standards specifically applicable to military discipline.  *See supra* Sections II.A.2 and II.A.3.

_____/s/_____
ROBERT W. MEYER
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, D.C. 20005
Tel: (202) 305-0872
E-mail: robert.w.meyer@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 1, 2024, a true and correct copy of the foregoing document was filed electronically with the court and has been sent to counsel of record via the court's electronic filing system.

_____*/s/*_____

Robert W. Meyer
