DEX 9



November 5, 2021

Lieutenant Colonel Peter Schmick, USAF
Chief, Space Enterprise Operations Division
Headquarters, Space Operations Command
Peterson Air Force Base, CO 80914

Subject: Letter of Admonishment ICO Major Jace Yarbrough, USAFR

Dear Lieutenant Colonel Schmick:

First Liberty Institute represents Major (Maj.) Jace Yarbrough, USAFR, in this matter. Please direct all correspondence related to this matter to me. For the reasons set forth herein, we respectfully request you rescind the Letter of Admonishment (the "Letter") you issued to Maj. Yarbrough on August 25, 2021.

**Background**

In early 2021, Senior Master Sergeant (SMSgt) Fish, USAF (Ret), invited Maj. Yarbrough to deliver a speech at his retirement ceremony aboard the Battleship Missouri Memorial, in Pearl Harbor, Hawaii. Maj. Yarbrough agreed to do so and delivered remarks in uniform at SMSgt Fish's retirement ceremony on June 11, 2021. Due to regulations in place because of COVID-19, total attendance at the ceremony was restricted to twenty-five attendees.

The U.S. Air Force did not activate Maj. Yarbrough or issue him orders to attend SMSgt Fish's retirement ceremony. Maj. Yarbrough did not request and the Air Force did not authorize Maj. Yarbrough to participate in the retirement ceremony in his official capacity. The Air Force did not pay Maj. Yarbrough or compensate him in any way, nor did it fund his travel from Texas to Hawaii and back. Instead, Maj. Yarbrough—a reservist—took time off from his civilian job, made his own travel arrangements, and paid personally for his airfare, rental car, hotel, and meals.

SMSgt Fish's retirement ceremony did not take place aboard a military installation. The USS Missouri was decommissioned in 1992, and in 1998 its ownership was transferred to the USS Missouri Memorial Association, a private entity, whereby it became the Battleship Missouri Memorial. Ownership remains with the USS Missouri Memorial Association to this day.

Based on these facts, Maj. Yarbrough traveled to, attended, and spoke at SMSgt Fish's retirement ceremony in his capacity as a friend and private citizen.

**Legal Analysis**

<u>The Air Force lacks jurisdiction over Maj. Yarbrough</u>

In order to issue a Letter of Admonishment to Maj. Yarbrough, the Air Force must have military jurisdiction over him at the time of his alleged misconduct. In this case, as discussed below, Maj. Yarbrough was not in a status that subjected him to Air Force jurisdiction. Therefore, the Air Force has no authority to issue a Letter of Admonishment to Maj. Yarbrough for conduct that occurred on private property while he was not in a military status.

Articles 2(a) and 2(c) of the Uniform Code of Military Justice (UCMJ) define military jurisdiction. Article 2(a) applies only when the Department of Defense either calls or orders the member to active duty status, or while the member is in an inactive-duty training (IDT) status. The

military's highest court describes this as an "all-or-nothing condition" for Article 2(a) jurisdiction to apply to a service member's conduct. *Duncan v. Usher*, 23 M.J. 29, 34 (C.M.A 1986). "Simply being a member of a reserve component" is insufficient to confer jurisdiction. *United States v. Hale*, 78 M.J. 268, 271 (C.A.A.F. 2019); *see also United States v. Morita,* 74 M.J. 116 (C.A.A.F. 2015).

Under Article 2(c), a person is subject to military jurisdiction if he satisfies the following four-part test: (1) he submitted voluntarily to military authority; (2) he was mentally competent at the time he voluntarily submitted to military authority; (3) he received military pay and allowances; and (4) he performed military duties. 10 U.S.C. § 802(c).

The Air Force lacked jurisdiction over Maj. Yarbrough on June 11, 2021, because none of the conditions required under Articles 2(a) or 2(c), UCMJ, are satisfied. For example, the Air Force had neither ordered Maj. Yarbrough to active duty nor ordered him to conduct IDT drills on that date, nor did he receive any form of military pay or allowances whatsoever. Setting aside the issue of whether Maj. Yarbrough's conduct on June 11, 2021, was prohibited under the UCMJ—which it was not—the Air Force would have had no authority to arrest or detain Maj. Yarbrough because he was speaking as a private citizen while on private property not under U.S. Government control. *See Morita*, 74 M.J. at 121 (no jurisdiction over reservist while that reservist was not in an official status even when reservist forged official orders). The Air Force should rescind the Letter on this basis alone.

<u>Maj. Yarbrough's speech is protected under the First Amendment</u>

The Air Force should rescind the Letter not only because it did not have jurisdiction over Maj. Yarbrough, but also because he engaged in speech protected by the First Amendment to the U.S. Constitution during the retirement ceremony. Service members do not forfeit their First Amendment rights by virtue of their military service. And even under circumstances during which service members' right of speech and expression may be abridged, the government cannot censor such speech in an arbitrary and capricious manner.

The military may restrict certain speech if the restrictions are "reasonable and 'not an effort to suppress expression merely because public officials oppose the speaker's view.'" *Nieto v. Flatau*, 715 F. Supp. 2d 650, 655 (E.D.N.C. 2010) (quoting *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46 (1983)). And while the military may have the limited ability to regulate some speech and expressive activity by service members, it may not do so in a manner that discriminates against a particular viewpoint. *Nieto*, 715 F. Supp. 2d. at 656. Such selective enforcement amounts to viewpoint discrimination, which the Constitution forbids.

There can be no doubt that the military has recently permitted service members to engage in political speech and expressive conduct while on active duty and in uniform.[1]

1.    In 2019, the military permitted service members in uniform to lead a political parade, whose purpose was in part "to show opposition to the Trump Administration's ban on transgender troops."[2] In support of this political parade, the California Guard's 144th Fighter Wing conducted a four-ship, F-15 flyover, and military members conducted a public re-enlistment ceremony that, according to the parade organizer, was intended to "sen[d] the clear message, 'We are done with Trump's anti-transgender rhetoric.'"[3] According to media reports, approximately 250,000 spectators were present at the parade.[4]

---

[1] The following is by no means an exhaustive list of permitted (or even explicitly approved) political speech and expressive conduct by service members.

[2] https://www.nbcsandiego.com/news/local/san-diego-unites-for-pride-parade-2019/132618/

[3] *Id.*

[4] *Id.*

2.      In March of this year, Sergeant Major of the Army Michael Grinston used his Twitter account to publicly criticize conservative political commentator Tucker Carlson by name.[5]  As of the date of this writing, Sergeant Major Grinston has roughly 44,400 Twitter followers, and his political message was retweeted over 3,500 times and received some 13,900 likes.[6]

3.      Also in March of this year, the Department of Defense used its official website to promote and celebrate that Pentagon Press Secretary John F. Kirby "[s]mite[d]" Carlson over some of Carlson's political comments.[7]

4.      Finally, in June 2020, the Army chose not to punish members of the Army National Guard who knelt while in uniform and on duty as part of political protests. [8]  When speaking of the incident, then-Secretary of the Army Ryan McCarthy acknowledged these uniformed members were "protest[ing] in uniform", and that "[w]e're not allowed really to [do that]."[9]

On information and belief, no adverse administrative action has been taken against any of the uniformed members mentioned above.

The military permitted active duty service members to publicly express their political opposition to the then-Commander in Chief, supported that opposition with an F-15 flyover, refused to punish members who it acknowledged engaged in political protest in uniform on duty, and used its official accounts to engage in political speech, reaching hundreds of thousands of viewers with political messages.  It has no grounds to punish a reservist for private speech delivered while not on orders or performing IDTs at a retirement ceremony on private property before 25 guests.  If the Air Force were to censor Maj. Yarbrough's speech while allowing other forms of expression on matters of public concern to go unchecked, it would constitute unconstitutional viewpoint discrimination.  The Air Force should rescind the Letter on this basis alone.

<u>Maj. Yarbrough's speech to which the Letter appears to object was apolitical</u>

The Letter appears to admonish Maj. Yarbrough because certain portions of his speech did not "remain apolitical."  For example, the Letter cites Maj. Yarbrough's charge that the audience "'let the lie come, but not through me.'"  This is, as Maj. Yarbrough's speech made clear, a direct quote from the work of Aleksandr Solzhenitsyn, in which he admonishes his readers to refuse to lie or participate in false or dishonest conduct.  Integrity is the Air Force's first and arguably "most important core value."[10]  Simply put, encouraging integrity cannot be a punishable violation of the UCMJ.

As another example, the Letter appears to admonish Maj. Yarbrough for stating that he "fear[ed] . . . 'radical political factions'" influencing the military.  Warning against politicizing the military is utterly consistent with American military tradition and doctrine, even when such warnings are delivered in the context of and in direct response to recent political events for the purpose of disseminating those warnings to the American public. [11]  Warning against the politicization of the military does not violate the UCMJ.

---

[5] https://bit.ly/3D6TBtK
[6] *Id.*; https://twitter.com/16thSMA
[7] https://www.defense.gov/News/News-Stories/Article/Article/2534159/press-secretary-smites-fox-host-that-dissed-diversity-in-us-military/
[8] https://www.military.com/daily-news/2020/06/08/guard-wont-punish-soldiers-who-took-knee-protests.html
[9] *Id.*
[10] https://www.jbcharleston.jb.mil/News/Commentaries/Display/Article/860665/integrity-our-most-important-core-value/
[11] https://edition.cnn.com/2020/06/11/politics/milley-trump-appearance-mistake/index.html

**Conclusion**

A Letter of Admonishment is improper under these circumstances.  Maj. Yarbrough was not subject to the Air Force's jurisdiction on June 11, 2021.  Moreover, any attempt to punish or take adverse action against him for his speech constitutes unlawful viewpoint discrimination, especially when that speech is fundamentally consistent with American military tradition, doctrine, and recent practice.

For the reasons stated herein, we request you rescind the Letter and take no further action against Maj. Yarbrough.  Thank you for your consideration in this matter.  Please contact me if necessary to discuss any aspect of this request.

Sincerely,

Michael Berry
General Counsel, First Liberty Institute
2001 W. Plano Pkwy, Ste 1600
Plano, TX 75075
(972) 941-4400

Copy to:
Colonel Todd Pennington, USAF



**DEPARTMENT OF THE AIR FORCE**
**UNITED STATES SPACE FORCE**
**HEADQUARTERS SPACE OPERATIONS COMMAND**

17 December 2021

Lt Col Andrea M. Hall
Acting as the Staff Judge Advocate
HQ SpOC/JA
150 Vandenberg Street, Suite 1150
Peterson AFB CO  80914-4020

Mr. Michael Berry
General Counsel
First Liberty Institute
2001 W. Plano Pkwy, Suite 1600
Plano, TX 75075

Dear Mr. Berry,

Thank you for your letter regarding your client Maj Jace Yarbrough in response to the Letter of Admonishment he received from Lt Col Schmick.  We ensured your letter and analysis was considered as part of Maj Yarbrough's response.  Regarding Department of the Air Force jurisdiction in this matter, please reference Air Force Instruction 36-2907, Adverse Administrative Actions, 22 May 2020, paragraph 2.1:

**Use of Administrative Counselings, Admonishments, and Reprimands.**
General officers, commanders, first sergeants, supervisors, and other individuals in the member's administrative or operational chain of command can issue administrative actions. This includes issuing administrative counseling, admonishment, and reprimands to ARC Airmen who commit an offense while in civilian status.

ARC Airmen refers to members of the Air Reserve Component.

Thank you again for your letter.  We appreciate the early opportunity to engage on matters of legal concern.

Sincerely

ANDREA M. HALL, Lt Col, USAF
Acting as the Staff Judge Advocate



January 26, 2022

Colonel James T. Horne, USSF
Deputy Director, Launch and Range Operations
Space Systems Command
Patrick Space Force Base, Florida

Subject: Letter of Admonishment ICO Major Jace Yarbrough, USAFR

Dear Colonel Horne:

First Liberty Institute represents Major (Maj) Jace Yarbrough, USAFR, in this matter.  Please direct all correspondence related to this matter to me.  This letter is submitted in response to Lieutenant Colonel (Lt Col) Andrea Hall's letter of December 17, 2021, rejecting our initial request that you rescind the Letter of Admonishment (LOA), and to Lt Col Peter Schmick's decision to sustain that LOA, issued to Maj Yarbrough on August 25, 2021.

For the reasons set forth herein and in our letter of November 5, 2021, we again respectfully request you rescind the LOA.  The Air Force had no jurisdiction over Maj Yarbrough at the time of the alleged incident, and the events in question do not amount to misconduct.

**<u>Background</u>**

In early 2021, Senior Master Sergeant (SMSgt) Fish, USAF (Ret), invited Maj Yarbrough to deliver a speech at his retirement ceremony aboard the Battleship Missouri Memorial, in Pearl Harbor, Hawaii.  Maj Yarbrough agreed to do so and delivered remarks in uniform at SMSgt Fish's retirement ceremony on June 11, 2021.  Due to regulations in place because of COVID-19, total attendance at the ceremony was restricted to twenty-five attendees.

The U.S. Air Force did not activate Maj Yarbrough or issue him orders to attend SMSgt Fish's retirement ceremony.  Maj Yarbrough did not request and the Air Force did not authorize Maj. Yarbrough to participate in the retirement ceremony in his official capacity.  The Air Force did not pay Maj Yarbrough or compensate him in any way, nor did it fund his travel from Texas to Hawaii and back.  Instead, Maj Yarbrough—a reservist—took time off from his civilian job, made his own travel arrangements, and paid personally for his airfare, rental car, hotel, and meals.

SMSgt Fish's retirement ceremony did not take place aboard a military installation. The government decommissioned the USS Missouri in 1992, and in 1998 transferred its ownership to a private entity, the USS Missouri Memorial Association, whereby it became the Battleship Missouri Memorial.  Ownership remains with the USS Missouri Memorial Association to this day.

Based on these facts, Maj Yarbrough traveled to, attended, and spoke at SMSgt Fish's retirement ceremony in his capacity as a private citizen.  Both as a private citizen and as a reserve officer, Maj Yarbrough retains his First Amendment rights, and it is entirely inappropriate to limit his rights merely because someone who heard his remarks expressed disapproval or disagreement with them.

**Legal Analysis**

1. The Air Force did not have jurisdiction over Maj Yarbrough at the time he made his speech.

In her letter, Lt Col Hall cited paragraph 2.1 of AFI 36-2907, *Adverse Administrative Actions*, as the basis for jurisdiction over Maj Yarbrough.  But her reliance on that Instruction is misplaced.  As a reservist who was not in a duty status at the time of the speech, Maj Yarbrough was not subject to Air Force jurisdiction.  In accordance with Article 2, UCMJ, 10 U.S.C. § 802, there are only two ways a reserve member can be subject to Air Force jurisdiction: 1) he is on active duty orders; or 2) he is in an inactive-duty training status.  The Air Force cannot expand its jurisdiction beyond these statutory limitations.

The Judge Advocate General (TJAG) of the Air Force agrees.  In OpJAGAF 2019-21, AIR NATIONAL GUARD, the TJAG recognizes the principles set forth in 10 U.S.C. § 802:

"A Title 10 commander generally may *not* take disciplinary and/or *administrative* action against an ANG member in Title 32 status for misconduct that took place while the ANG member was on Title 32 orders." [Emphasis added]

OpJAGAF 2019-21 cites *United States v. Hale*, 78 M.J. 268 (C.A.A.F. 2019) for support.  As explained in our November 5, 2021 letter, in *Hale* the nation's highest military court held that the Air Force does *not* have jurisdiction over offenses that occurred while a reservist was not in an active military status.

OpJAGAF 2019-21 also accords with the National Guard Bureau's position in recent litigation.  In *Kennedy v. Austin*, No. 21-cv-00772 (D. Co., Mar. 17, 2021), the National Guard Bureau improperly reprimanded a Colorado National Guard member for his off-duty attendance at a Black Lives Matter (BLM) protest that unexpectedly resulted in violence.  After being reprimanded for attending the BLM protest, the National Guard member sued, alleging the reprimand was improper.  The National Guard Bureau thereafter rescinded the reprimand, acknowledging that jurisdiction is only available when a member is in Title 10 status.

Because Maj Yarbrough was neither on active duty orders, nor in an inactive-duty training status, the Air Force lacked jurisdiction over him.  He acted as a private citizen, and engaged in private speech on private property.  The LOA must be rescinded on this basis alone.

2. <u>Maj Yarbrough's speech is protected by the First Amendment and is not subject to adverse action.</u>

Maj Yarbrough gave his speech in his capacity as a private citizen, which alone warrants rescinding the LOA. In addition, even if he had given the speech while in an active status, it would be fully protected by the First Amendment to the Constitution, which also requires rescission of the LOA.

While the "military is a specialized organization, one whose efficiency may at times be vital to the national interest," this interest must be reconciled "with the First Amendment rights of the participants." *Stolte v. Laird*, 353 F. Supp. 1392, 1403 (D.D.C. 1972). Military members do not relinquish their constitutional rights and freedoms by virtue of wearing the uniform. In fact, "[m]ilitary personnel retain their basic rights and freedoms as American citizens, subject only to those limitations necessary in the interests of good order and discipline, the unique components of their specialized environment." *Id.* at 1402-03.

In *Stolte*, the Army assigned two active duty members to a basic training installation during the Vietnam War. *Id.* at 1393. The Army charged both soldiers with violating Uniform Code of Military Justice (UCMJ) Articles 134 and 81 for distributing 150 copies of leaflets on the installation expressing their disapproval of the war. *Id.* at 1393-94. The Army viewed such action as a publicly uttered statement "disloyal to the United States with design to promote disloyalty and disaffection among the troops and civilian populace." *Id.* at 1394. As a result, the Army sentenced the soldiers to dishonorable discharges, forfeiture of all pay and allowances, and confinement at hard labor for three years. The district court, however, reversed the Army's decision, holding that the convictions violated the soldiers' constitutional rights.

Importantly, the *Stolte* court held that "[t]o justify restrictions on military personnel that do not apply to civilians, it would be necessary to show a peculiar harm to morale and discipline specially resulting from the fact that anti-war views were expressed by a soldier rather than a civilian." *Id.* at 1403. And even though the soldiers made the statements at issue on a military installation, the court was compelled by the fact that "[t]here was easy access and communication to the civilian world, where anti-war dissent was common and increasingly vehement at the times involved [therein]." *Id.* at 1404. In fact, the court noted that, "[j]ust as '[c]onduct that annoys some people does not annoy others,' so also that which is disloyalty to some may seem to others the highest form of patriotism." *Id.* at 1398-99.

Similarly, the subjects Maj Yarbrough addressed continue to be widely and commonly debated in the both the military and civilian communities. "[M]ilitary authorities [cannot], therefore, punish all statements deemed to adversely affect 'motivation' or 'morale' in a general sense. For this would render meaningless even that limited freedom of speech recognized by the military as a soldier's constitutional right." *Stolte* at 1403.

3. <u>Punishing Maj Yarbrough for his speech is unlawful viewpoint discrimination.</u>

Finally, not only is Maj Yarbrough's speech protected by the First Amendment, but taking any action against him because of his speech is unlawful. The Air Force may only restrict certain speech if the restrictions are "reasonable and 'not an effort to suppress

expression merely because public officials oppose the speaker's view.'" *Nieto v. Flatau*, 715 F. Supp. 2d 650, 655 (E.D.N.C. 2010) (quoting *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46 (1983)).  And while the Air Force may have the limited ability to regulate some speech and expressive activity by service members, it may not do so in a manner that discriminates against a particular viewpoint.  *Nieto*, 715 F. Supp. 2d. at 656.  As explained in our November 5, 2021 letter, the Department of Defense continues to permit and even encourage expressive conduct by service members on many controversial topics.  It cannot do so while prohibiting different viewpoints on those same topics.  The Constitution forbids such selective enforcement against Maj Yarbrough while others are free to express views on controversial topics simply because those views represent the Air Force's preferred viewpoint.

## Conclusion

For the reasons set forth in herein and in our November 5, 2021 letter, we respectfully request that you rescind the LOA and take no further action against Maj Yarbrough.  While we hope to resolve this matter quickly and amicably, we are prepared to take the necessary legal action to vindicate Maj Yarbrough's rights.

Thank you for your consideration in this matter.  Please contact me if necessary to discuss any aspect of this request.

Sincerely,

Michael Berry
General Counsel, First Liberty Institute
2001 W. Plano Pkwy, Ste 1600
Plano, TX 75075
(972) 941-4400



**DEPARTMENT OF THE AIR FORCE**
**UNITED STATES SPACE FORCE**
**HEADQUARTERS SPACE OPERATIONS COMMAND**

4 February 2022

Colonel Ted Richard
Staff Judge Advocate
HQ SpOC/JA
150 Vandenberg Street, Suite 1150
Peterson SFB CO 80914-4020

Mr. Michael Berry
General Counsel
First Liberty Institue
2001 W. Plano Pkwy, Suite 1600
Plano, TX 75075

Dear Mr. Berry,

Thank you for your letter regarding your client Maj Jace Yarbrough in response to Lt Col Hall's letter. You cited OpJAGAF 2019-21, however, the current version of AFI 36-2907 was published on 22 May 2020. Paragraph 2.1 specifically states: "General officers, commanders, first sergeants, supervisors, and other individuals in the member's administrative or operational chain of command can issue administrative actions. This includes issuing administrative counseling, admonishment, and reprimands to **ARC Airman** who commit an offense while in civilian status."

Additionally, your letter makes multiple references to issues of criminal jurisdiction. The LOA that was issued to Maj Yarbrough is an administrative matter. *See Williams v. Roche,* 468 F. Supp 2d 836, 849 (2007) "in the military context, administrative discharge hearings are not criminal procedures…"

Finally, your letter argues the issuance of the LOA was a violation of Maj Yarbrough's right to free speech. While servicemembers are protected by the First Amendment, courts have historically been quick to reiterate that servicemembers' rights are not the same as their civilian counterparts. OpJAGAF 2013-3 citing *United States v. Zimmerman,* 43 MJ 782, 785 (ACCA 1996) (citing *United States v. Priest*, 45 C.M.R. 338 (CMA 1972).

Thank you again for your letter but we remain convinced the LOA was both lawful an appropriate.

THEODORE T. RICHARD, Colonel, USAF
Staff Judge Advocate

**SEMPER SUPRA**



April 12, 2022

Brigadier General Douglas A. Schiess, USSF
Deputy Commanding General, Operations
Headquarters, Space Operations Command
Peterson Air Force Base, CO 80914

**Re: Appeal of Letter of Admonishment ICO Major Jace Yarbrough, USAFR**

Dear Brigadier General Schiess,

First Liberty Institute represents Major (Maj) Jace Yarbrough, USAFR, in this matter. Please direct all correspondence related to this matter to me. This letter is submitted in response to Colonel Theodore T. Richard's letter of February 4, 2022.

For the reasons set forth herein and in our letters of November 5, 2021, and January 26, 2022, we again respectfully request you rescind the Letter of Admonishment. The Air Force lacked jurisdiction over Maj Yarbrough at the time of the alleged incident, and the events in question do not amount to misconduct.

**<u>Background</u>**

In early 2021, Senior Master Sergeant (SMSgt) Fish, USAF (Ret), invited Maj Yarbrough to deliver a speech at his June 11, 2021 retirement ceremony aboard the Battleship Missouri Memorial, in Pearl Harbor, Hawaii. Maj Yarbrough agreed to recognize SMSgt Fish's honorable service and delivered his remarks in uniform. Due to Covid-19 regulations at that time, total attendance at the ceremony was restricted to twenty-five attendees.

Maj Yarbrough participated in the ceremony in his personal, civilian capacity. The Department of the Air Force did not activate Maj Yarbrough or issue him orders to attend SMSgt Fish's retirement ceremony. Maj Yarbrough did not request and the Air Force did not authorize Maj Yarbrough to participate in the retirement ceremony in his official capacity. The Air Force did not pay Maj Yarbrough or compensate him in any way, nor did it fund his travel from Texas to Hawaii and back. Instead, Maj Yarbrough—a reservist—took time off from his civilian job, made his own travel arrangements, and paid personally for his airfare, rental car, hotel, and meals.

Maj Yarbrough delivered his remarks on private property—not a military installation. The USS Missouri was decommissioned in 1992, and in 1998 its ownership was transferred to the USS Missouri Memorial Association, a private entity, whereby it became the Battleship Missouri Memorial. Ownership remains with the USS Missouri Memorial Association to this day.

Based on these facts, Maj Yarbrough traveled to, attended, and spoke at SMSgt Fish's retirement ceremony in his capacity as a friend and private citizen. Nevertheless, the Air Force issued Maj Yarbrough a Letter of Admonishment (LOA) on August 25, 2021, after certain military members present at the ceremony complained about the content of Maj Yarbrough's speech.

On November 5, 2021, Maj Yarbrough, through counsel, submitted a response to the LOA. On December 17, 2021, the Air Force replied stating, "[w]e ensured your letter and analysis was considered as part of Maj Yarbrough's response." However, like the LOA, the reply improperly relied on paragraph 2.1 in AFI 36-2907, *Adverse Administrative Actions*, May 22, 2020 as the basis for the Air Force having jurisdiction over Maj Yarbrough and failed to address our legal concerns over the speech being protected and mischaracterized as misconduct.  On January 26, 2022, Maj Yarbrough appealed the December 17, 2021 decision.

On February 4, 2022, the Air Force responded and once again improperly relied upon paragraph 2.1 in AFI 36-2907 as the basis for jurisdiction while also suggesting that Maj Yarbrough's reference to OpJAGAF 2019-21, 30 April 2019, AIR NATIONAL GUARD in support of our jurisdictional argument was somehow incorrect. To be clear, the legal rationale in OpJAGAF 2019-21 is relevant and applicable in light of the May 22, 2020 update to AFI 36-2907 because 10 U.S.C. § 802 is still  the only statutory authority available for SECAF to exercise military jurisdiction over reservist Airmen who are subject to adverse administrative action. Congress did not grant SECAF the authority to expand the Air Force's jurisdictional reach to reservists in a civilian status. *See* 10 U.S.C. § 9013.[1]

## Legal Analysis

1. The Air Force did not have jurisdiction over Maj Yarbrough at the time he made his speech.

Maj Yarbrough was not subject to military jurisdiction at the time of his alleged misconduct. Articles 2(a) and 2(c) of the Uniform Code of Military Justice (UCMJ) define the relevant instances where military jurisdiction applies.

Article 2(a) applies when the Department of Defense either calls or orders the member to active duty status, or while the member is in an inactive-duty training status. 10 U.S.C. § 802(a). The military's highest court describes this as an "all-or-nothing condition" for Article 2(a)

---

[1] Specifically, pursuant to 10 U.S.C. § 9013(g),

"The Secretary of the Air Force may--
(1) assign, detail, and prescribe the duties of members of the Air Force, members of the Space Force, and civilian personnel of the Department of the Air Force;
(2) change the title of any officer or activity of the Department of the Air Force not prescribed by law; and
(3) *prescribe regulations to carry out his functions, powers, and duties under this title*." (emphasis added).

There is no evidence, either in the text of this Code provision or its legislative history, to support the Air Force's position that Congress intended to grant SECAF the authority to expand the Air Force's jurisdictional reach over reservists in a civilian status.

jurisdiction to apply to a service member's conduct. *Duncan v. Usher*, 23 M.J. 29, 34 (C.M.A. 1986). "Simply being a member of a reserve component" is insufficient to confer jurisdiction. *United States v. Hale*, 78 M.J. 268, 271 (C.A.A.F. 2019); *see also United States v. Morita*, 74 M.J. 116 (C.A.A.F. 2015).

Article 2(c) determines jurisdiction based on the following four-part test: the person serving (1) submitted voluntarily to military authority; (2) was mentally competent at the time he voluntarily submitted to military authority; (3) received military pay and allowances; and (4) performed military duties. 10 U.S.C. § 802(c).

Because Maj Yarbrough was never ordered to active duty status and was not in an inactive-duty training status at the time he gave his speech, he was not subject to Article 2(a) jurisdiction. He also was not subject to Article 2(c) jurisdiction because he did not (1) submit to military authority, (2) receive military pay and allowances, or (3) perform military duties at the time of his speech. For these reasons, and because there is no sound statutory or legal basis for SECAF's unilateral and unauthorized expansion of military jurisdiction beyond 10 U.S.C. § 802 by way of AFI 36-2907[2], the Air Force improperly issued an LOA to Maj Yarbrough for his protected speech on June 11, 2021. Therefore, the LOA should be rescinded.

2. <u>Maj Yarbrough's speech is protected by the First Amendment and is not subject to adverse action.</u>

The Air Force should also rescind the LOA because Maj Yarbrough engaged in speech protected by the First Amendment to the U.S. Constitution during SMSgt Fish's retirement ceremony. Service members do not forfeit their First Amendment rights by virtue of their military service. And even under circumstances during which service members' right of speech and expression may be abridged, the government cannot censor such speech in an arbitrary and capricious manner.

The LOA appears to admonish Maj Yarbrough because certain portions of his speech did not "remain apolitical." For example, the LOA cites Maj Yarbrough's charge that the audience "'let the lie come, but not through me.'" This is, as Maj Yarbrough's speech made clear, a direct quote from the work of Aleksandr Solzhenitsyn, an outspoken critic of communism, in which he admonishes his readers to refuse to lie or participate in false or dishonest conduct. Integrity is the Air Force's first and arguably "most important core value."[3] Simply put, encouraging integrity cannot be a punishable violation of the UCMJ.

---

[2] SECAF's general authority to "prescribe regulations to carry out his functions, powers, and duties" under 10 U.S.C. § 9013 does not provide SECAF with the specific authority to unilaterally expand the Air Force's jurisdictional reach to reservists in a civilian status by way of an Air Force instruction, specifically AFI 36-2907, which allows "individuals in the member's administrative or operational chain of command" to issue an "administrative counseling, admonishment, and reprimands *to ARC Airmen who commit an offense while in civilian status.*" Para. 2.1. (emphasis added). If SECAF seeks such authority, it must be granted by Congress.
[3] https://www.jbcharleston.jb.mil/News/Commentaries/Display/Article/860665/integrity-our-most-important-core-value/

As another example, the LOA appears to admonish Maj Yarbrough for stating that he "fear[ed] . . . 'radical political factions'" influencing the military. Warning against politicizing the military is utterly consistent with American military tradition and doctrine, even when such warnings are delivered in the context of and in direct response to recent political events and for the purpose of disseminating those warnings to the American public.[4] Warning against the politicization of the military does not qualify as "political speech" and does not violate the UCMJ.

"It is axiomatic that the government may not regulate speech based on its substantive content or the message it conveys. *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 828 (1995) (citing *Police Dept. of Chicago v. Mosley*, 408 U.S. 92, 96 (1972)). This constitutional rule applies to the military with equal force. *Nieto v. Flatau*, 715 F. Supp. 2d 650, 655 (E.D.N.C. 2010) (quoting *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46 (1983)).

"[R]egulations that 'selectively grant[ ] safe passage to speech of which [officials] approve while curbing speech of which they disapprove' are impermissible, even in the military." *Nieto*, 715 F.Supp at 655. This is particularly true when the speech is made in a public employee's capacity as a private citizen on a matter of public concern, even if it may be critical in tone. *Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205*, 391 U.S. 563 (1968); *see also Cortright v. Resor*, 447 F.2d 245, 256 (2d Cir. 1971) (Oakes, C.J., dissenting) ("Soldiers must be held to have basic civil rights, including those of petitioning the Government for a redress of grievances and speaking freely off-duty. The Government here, as has been said, doesn't really argue that soldiers don't have these basic rights, at least off-duty, but this is still the fundamental question. It must be answered in the affirmative for the safety of the country: a Specialist Cortright and a General Gavin must equally be permitted to persuade the public, the Congress or the Executive that, for example, a given course of military-diplomatic action or foreign policy is wrong.").

In the Air Force's letter of 4 February 2022, Col Richard asserts that "[w]hile servicemembers are protected by the First Amendment, courts have historically been quick to reiterate that servicemembers' rights are not the same as their civilian counterparts. OpJAGAF 2013-3, citing *United States v. Zimmerman*, 43 M.J. 782, 785 (A.C.C.A. 1996) (citing *United States v. Priest*, 45 C.M.R. 338 (C.M.A. 1972))." While this may be true, reliance on this assertion as an appropriate justification for issuing the LOA incorrectly assumes that the Air Force had UCMJ jurisdiction over Maj Yarbrough at the time he made his speech, which Col Richard agrees was not the case[5]. Furthermore, even if the Air Force had UCMJ jurisdiction over Maj Yarbrough, the facts and holding in *Zimmerman* are entirely misplaced. ("Evidence that appellant was motivated by white supremacist views when he wrongfully disposed of stolen military munitions to what he believed was a white supremacist group constitutes aggravating circumstances that directly relate to the offense. R.C.M. 1001(b)(4)." *Zimmerman*, 43 M.J. at 786).

---

[4] *See, e.g.*, https://edition.cnn.com/2020/06/11/politics/milley-trump-appearance-mistake/index.html
[5] "Additionally, your letter makes multiple references to issues of criminal jurisdiction. The LOA that was issued to Maj Yarbrough is an administrative matter. *See Williams v. Roche*, 468 F. Supp 2d 836, 849 (2007) 'in the military context, administrative discharge hearings are not criminal procedures…'" Letter from Col Ted Richard to Mr. Michael Berry dated 4 February 2022.

Simply because military members expressed displeasure with Maj Yarbrough's speech at SMSgt Fish's retirement ceremony does not make it worthy of restriction or adverse action. In fact, by restricting Maj Yarbrough's June 11, 2021 speech, the Air Force violated the First Amendment. Because Maj Yarbrough was speaking in his capacity as a private citizen, not on orders, on a matter of public concern, the Air Force has no legal basis to restrict such speech and the LOA should be rescinded.

**Conclusion**

For the reasons set forth in our letters of November 5, 2021, January 26, 2022, and herein, and there being no jurisdictional or substantive basis for issuing adverse action against Maj Yarbrough for his June 11, 2021 protected speech, it is respectfully requested that the LOA be immediately rescinded to avoid the need for further action.

Thank you for your consideration in this matter. Please contact me if necessary to discuss any aspect of this request.

Sincerely,

Michael Berry
Director of Military Affairs,
First Liberty Institute
2001 W. Plano Pkwy, Ste 1600
Plano, TX 75075
(972) 941-4400

Attachments:

1. August 25, 2021 USAF Letter of Admonishment
2. November 5, 2021 First Liberty Institute Response on Behalf of Maj Jace Yarbrough, USAFR
3. December 17, 2021 USAF Response
4. January 26, 2022 First Liberty Institute Appeal on Behalf of Maj Jace Yarbrough, USAFR
5. February 4, 2022 USAF Response



**DEPARTMENT OF THE AIR FORCE**
**UNITED STATES SPACE FORCE**
**HEADQUARTERS SPACE OPERATIONS COMMAND**

18 April 2022

Brigadier General Douglas A. Schiess
Deputy Commanding General, Operations
Headquarters Space Operations Command
150 Vandenberg Street
Peterson SFB CO 80914-4020

Mr. Michael Berry
General Counsel
First Liberty Institute
2001 W. Plano Pkwy, Suite 1600
Plano, TX 75075

Dear Mr. Berry,

I am in receipt of your 12 April 2022 letter appealing a Letter of Admonishment (LOA) on behalf of your client, Major Jace Yarbrough. After carefully reviewing your letter, the attachments listed within it, and after consulting with my legal team, I have decided to uphold the LOA.

DOUGLAS A. SCHIESS
Brigadier General, USAF
DCG, O

**SEMPER SUPRA**



July 20, 2022

Lieutenant General Stephen N. Whiting
Commander, Space Operations Command
Headquarters, Space Operations Command
Peterson Air Force Base, CO 80914

*Sent via email*

**Re: Appeal of Letter of Admonishment ICO Major Jace Yarbrough, USAFR**

Dear Lieutenant General Whiting,

First Liberty Institute represents Major (Maj) Jace Yarbrough, USAFR, in this matter.  This letter is submitted in response to Brigadier General Douglas A. Scheiss's letter of April 18, 2022.

For the reasons set forth herein and in our letters of November 5, 2021, January 26, 2022, and April 12, 2022, we again respectfully request that the Air Force rescind the Letter of Admonishment (LOA) issued to Maj Yarbrough on August 25, 2021.  The Air Force lacked jurisdiction over Maj Yarbrough at the time of the alleged incident, and the events in question do not amount to misconduct.

**<u>Background</u>**

In early 2021, Senior Master Sergeant (SMSgt) Fish, USAF (Ret), invited Maj Yarbrough to participate at his June 11, 2021 retirement ceremony aboard the Battleship Missouri Memorial, in Pearl Harbor, Hawaii. Maj Yarbrough agreed to recognize SMSgt Fish's honorable service and delivered his remarks in uniform. Due to COVID-19 regulations at that time, total attendance at the ceremony was restricted to twenty-five attendees.

Maj Yarbrough participated in the ceremony in his personal, civilian capacity.  The Department of the Air Force did not activate Maj Yarbrough or issue him orders to attend SMSgt Fish's retirement ceremony. Maj Yarbrough did not request and the Air Force did not authorize Maj Yarbrough to participate in the retirement ceremony in his official capacity. The Air Force did not pay Maj Yarbrough or compensate him in any way, nor did it fund his travel from Texas to Hawaii and back. Instead, Maj Yarbrough—a reservist—took time off from his civilian job, made his own travel arrangements, and paid personally for his airfare, rental car, hotel, and meals.

Maj Yarbrough delivered his remarks on private property—not a military installation. The Navy decommissioned the USS Missouri in 1992, and in 1998 transferred its ownership to the USS Missouri Memorial Association, a private entity, whereby it became the Battleship Missouri Memorial. Ownership remains with the USS Missouri Memorial Association to this day.

Based on these facts, Maj Yarbrough traveled to, attended, and spoke at SMSgt Fish's retirement ceremony in his capacity as a friend and private citizen. Nevertheless, the Air Force issued Maj Yarbrough a LOA on August 25, 2021, after certain military members present at the ceremony complained about the content of Maj Yarbrough's speech.

On November 5, 2021, Maj Yarbrough, through First Liberty Institute as counsel, submitted a response to the LOA. On December 17, 2021, the Air Force replied stating, "[w]e ensured your letter and analysis was considered as part of Maj Yarbrough's response." However, like the LOA, the reply improperly relied on paragraph 2.1 in AFI 36-2907, *Adverse Administrative Actions*, May 22, 2020, as the basis for the Air Force having jurisdiction over Maj Yarbrough and failed to address Maj Yarbrough's position that his speech was fully protected by the First Amendment to the United States Constitution and mischaracterized by the Air Force as misconduct. On January 26, 2022, Maj Yarbrough appealed the December 17, 2021 decision.

On February 4, 2022, the Air Force responded and once again improperly relied upon paragraph 2.1 in AFI 36-2907 as the basis for jurisdiction while also suggesting that Maj Yarbrough's reference to OpJAGAF 2019-21, 30 April 2019, AIR NATIONAL GUARD in support of his jurisdictional argument was somehow incorrect. To be clear, the legal rationale in OpJAGAF 2019-21 is relevant and applicable despite the May 22, 2020 update to AFI 36-2907 because 10 U.S.C. § 802 is still the only statutory authority available for SECAF to exercise military jurisdiction over reservist Airmen who are subject to adverse administrative action. Congress did not grant SECAF the authority to expand the Air Force's jurisdictional reach to reservists in a civilian status. *See* 10 U.S.C. § 9013.[1]

On April 12, 2022, Maj Yarbrough appealed the decision to uphold the LOA, which was then upheld by the Air Force in a letter dated April 18, 2022. This letter now serves as Maj Yarbrough's fourth appeal of the LOA.

---

[1] Specifically, pursuant to 10 U.S.C. § 9013(g):

"The Secretary of the Air Force may--
(1) assign, detail, and prescribe the duties of members of the Air Force, members of the Space Force, and civilian personnel of the Department of the Air Force;
(2) change the title of any officer or activity of the Department of the Air Force not prescribed by law; and
(3) *prescribe regulations to carry out his functions, powers, and duties under this title*." (emphasis added).

There is no support, either in the text of this Code provision or its legislative history, for the Air Force's position that Congress intended to grant SECAF the authority to expand the Air Force's jurisdictional reach over reservists in a civilian status.

**Legal Analysis**

1.  The Air Force lacked jurisdiction over Maj Yarbrough at the time of his protected speech.

Maj Yarbrough was not subject to military jurisdiction when, in civilian status and on a personal trip, he engaged in speech fully protected by the First Amendment.  Articles 2(a) and 2(c) of the Uniform Code of Military Justice (UCMJ) define when the Department of Defense has jurisdiction over a service member.

Article 2(a) applies when the Department of Defense either calls or orders the member to active duty status, or while the member is in an inactive-duty training status. 10 U.S.C. § 802(a). The military's highest court describes this as an "all-or-nothing condition" for Article 2(a) jurisdiction to apply to a service member's conduct.  *Duncan v. Usher*, 23 M.J. 29, 34 (C.M.A. 1986). "Simply being a member of a reserve component" is insufficient to confer jurisdiction. *United States v. Hale*, 78 M.J. 268, 271 (C.A.A.F. 2019); *see also United States v. Morita*, 74 M.J. 116 (C.A.A.F. 2015).

Article 2(c) determines jurisdiction based on the following four-part test: the person serving (1) submitted voluntarily to military authority; (2) was mentally competent at the time he voluntarily submitted to military authority; (3) received military pay and allowances; and (4) performed military duties.  10 U.S.C. § 802(c).

Because Maj Yarbrough was never ordered to active duty status and was not in an inactive-duty training status at the time he gave his speech, he was not subject to Article 2(a) jurisdiction. He also was not subject to Article 2(c) jurisdiction because he did not (1) submit to military authority, (2) receive military pay and allowances, or (3) perform military duties at the time of his speech. For these reasons, and because there is no sound statutory or legal basis for SECAF's unilateral and unauthorized expansion of military jurisdiction beyond 10 U.S.C. § 802 by way of AFI 36-2907[2], the Air Force improperly issued a LOA to Maj Yarbrough for his protected speech on June 11, 2021. Therefore, the LOA should be rescinded.

2.  Maj Yarbrough's speech is protected by the First Amendment and is not subject to adverse action.

The Air Force should also rescind the LOA because Maj Yarbrough engaged in speech protected by the First Amendment to the U.S. Constitution during SMSgt Fish's retirement ceremony.  Service members do not forfeit their First Amendment rights by virtue of their military service.   And even under circumstances during which service members' right of speech and

---

[2] SECAF's general authority to "prescribe regulations to carry out his functions, powers, and duties" under 10 U.S.C. § 9013 does not provide SECAF with the specific authority to unilaterally expand the Air Force's jurisdictional reach to reservists in a civilian status by way of an Air Force instruction, specifically AFI 36-2907, which allows "individuals in the member's administrative or operational chain of command" to issue an "administrative counseling, admonishment, and reprimands *to ARC Airmen who commit an offense while in civilian status*." Para. 2.1. (emphasis added).  If SECAF seeks such authority, it must be granted by Congress.

expression may be abridged, the government cannot censor such speech in an arbitrary and capricious manner.

"It is axiomatic that the government may not regulate speech based on its substantive content or the message it conveys. *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 828 (1995) (citing *Police Dept. of Chicago v. Mosley*, 408 U.S. 92, 96 (1972)). This constitutional rule applies to the military with equal force. *Nieto v. Flatau*, 715 F. Supp. 2d 650, 655 (E.D.N.C. 2010) (quoting *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46 (1983)).

"[R]egulations that 'selectively grant[ ] safe passage to speech of which [officials] approve while curbing speech of which they disapprove' are impermissible, even in the military." *Nieto*, 715 F. Supp at 655. This is particularly true when the speech is made in a public employee's capacity as a private citizen on a matter of public concern, even if it may be critical in tone. *Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205*, 391 U.S. 563 (1968).

While the "military is a specialized organization, one whose efficiency may at times be vital to the national interest," this interest must be reconciled "with the First Amendment rights of the participants." *Stolte v. Laird*, 353 F. Supp. 1392, 1403 (D.D.C. 1972). Military members do not dispose of their Constitutional rights and freedoms by virtue of wearing the uniform. In fact, "[m]ilitary personnel retain their basic rights and freedoms as American citizens, subject only to those limitations necessary in the interests of good order and discipline, the unique components of their specialized environment." *Id*. at 1402-03. And, as the Supreme Court determined on June 27, 2022 in *Kennedy v. Bremerton School District*, No. 21-418, 2022 WL 2295034, at *26 (2022), "[b]ut learning how to tolerate speech or prayer of all kinds is 'part of learning how to live in a pluralistic society,' a trait of character essential to 'a tolerant citizenry.'" (citation omitted).

The Air Force's issuance of a LOA to Maj Yarbrough for his off-duty speech as a private citizen on a matter of public concern is nothing less than a discriminatory double standard intended to punish certain viewpoints. Indeed, the military has recently permitted service members to engage in a wide variety of expression even while on active duty and in uniform. In the wake of George Floyd's death, on June 3, 2020, General Joseph L. Lengyel, Chief of the National Guard Bureau, issued a letter on official letterhead that stated, in part, "[e]veryone who wears the uniform of our country takes an oath to uphold the Constitution and everything for which it stands. If we are to fulfill our obligation as service members, as Americans, and as decent human beings, we have to take our oath seriously. We cannot tolerate racism, discrimination, or casual violence. We cannot abide divisiveness and hate. We cannot stand by and watch. We ask for the intercession of what Abraham Lincoln called 'the better angels of our nature.'"[3] To our knowledge, no adverse action was taken against Gen Lengyel for his speech, nor was it deemed insubordinate, disrespectful, or unbecoming for an officer in the military.

---

[3]   https://www.marinecorpstimes.com/2020/06/03/army-navy-leaders-latest-to-speak-out-about-racism-in-wake-of-george-floyds-death-in-police-custody/

Again in 2019, the military permitted service members in uniform to participate in a political parade "to show opposition to the Trump Administration's ban on transgender troops."[4] In support of this parade, the California Guard's 144th Fighter Wing conducted a four-ship, F-15 flyover, and military members conducted a public re-enlistment ceremony that, according to the parade organizer, was intended to "sen[d] the clear message, 'We are done with Trump's anti-transgender rhetoric."[5] According to media reports, approximately 250,000 spectators were present at the parade, [6] and to our knowledge, no disciplinary action was taken against the participating service members.

Furthermore, the LOA is arbitrary and capricious because it appears to admonish Maj Yarbrough because certain portions of his speech did not "remain apolitical." 5 U.S.C. §706, *Lewis v. Marsh*, 672 F.Supp. 14 (D.D.C. 1987). For example, the LOA cites Maj Yarbrough's charge that the audience "'let the lie come, but not through me.'" This is, as Maj Yarbrough's speech made clear, a direct quote from the work of Aleksandr Solzhenitsyn, an outspoken critic of communism who wrote on the topic through the lens of a faithful Christian, in which he admonishes his readers to refuse to lie or participate in false or dishonest conduct. Integrity is the Air Force's first and arguably "most important core value."[7] Simply put, encouraging integrity cannot be a punishable violation of the UCMJ.

As another example, the LOA appears to admonish Maj Yarbrough for stating that he "fear[ed] . . . 'radical political factions'" influencing the military. Warning against politicizing the military is utterly consistent with American military tradition and doctrine, even when such warnings are delivered in the context of and in direct response to recent political events and for the purpose of disseminating those warnings to the American public.[8] Warning against the politicization of the military does not qualify as "political speech" and does not violate the UCMJ.

By restricting Maj Yarbrough's June 11, 2021 speech as a private citizen, not on orders, on a matter of public concern, the Air Force has acted in an arbitrary and capricious manner and in violation of the First Amendment. Simply because military members expressed displeasure with Maj Yarbrough's speech at SMSgt Fish's retirement ceremony does not make it worthy of restriction or adverse action. For these reasons, the Air Force has no legal basis to restrict such speech and the LOA should be rescinded.

---

[4] https://www.nbcsandiego.com/news/local/san-diego-unites-for-pride-parade-2019/132618/
[5] *Id.*
[6] *Id.*
[7]   https://www.jbcharleston.jb.mil/News/Commentaries/Display/Article/860665/integrity-our-most-important-core-value/
[8] *See, e.g.*, https://edition.cnn.com/2020/06/11/politics/milley-trump-appearance-mistake/index.html

Page 6
Maj J. Yarbrough
July 20, 2022

**Conclusion**

     For the reasons set forth in our letters of November 5, 2021, January 26, 2022, April 12, 2022, and herein, and there being no jurisdictional or substantive basis for issuing adverse action against Maj Yarbrough for his June 11, 2021 protected speech, we respectfully request that you immediately rescind the LOA to avoid the need for further action.

     Thank you for your consideration in this matter. Please contact us if necessary to discuss any aspect of this request.

Sincerely,

Michael Berry
Director of Military Affairs

Danielle A. Runyan
Of Counsel

First Liberty Institute
2001 W. Plano Pkwy, Ste 1600
Plano, TX 75075
(972) 941-4400

Attachments:

1. April 12, 2022 First Liberty Institute Appeal on Behalf of Maj Jace Yarbrough, USAFR (with attachments)
2. April 18, 2022 USAF Response



**DEPARTMENT OF THE AIR FORCE**
**UNITED STATES SPACE FORCE**
**HEADQUARTERS SPACE OPERATIONS COMMAND**

29 July 2022

Stephen N. Whiting
Commander
HQ SpOC/CC
150 Vandenberg Street, Suite 105
Peterson AFB CO  80914-4020

Mr. Michael Berry
General Counsel
First Liberty Institute
2001 W. Plano Pkwy, Suite 1600
Plano, TX 75075

Dear Mr. Berry,

I received your letter dated July 20, 2022 appealing a Letter of Admonishment (LOA) issued to your client, Maj Jace Yarbrough.  I thoroughly reviewed the matters and consulted with my Staff Judge Advocate.  I determined the LOA was issued in compliance with Air Force Instruction 36-2907, *Adverse Administrative Actions*, dated May 22, 2020 as well as applicable law.  Your request on behalf of Maj Yarbrough to rescind the LOA is denied.

Sincerely

STEPHEN N. WHITING
Lieutenant General, USSF
Commander (Optional)

**SEMPER SUPRA**





December 9, 2022

General B. Chance Saltzman
Chief of Space Operations
United States Space Force
2020 U.S. Space Force Pentagon
STE 4E858
Washington, D.C. 20330-2000

*Sent via email*

**Re: Appeal of Letter of Admonishment ICO Major Jace Yarbrough, USAFR**

Dear General Saltzman,

First Liberty Institute represents Major (Maj) Jace Yarbrough, USAFR, in this matter. This letter is submitted in response to Lieutenant General Stephen N. Whiting's letter of July 29, 2022.

For the reasons set forth herein and in our letters of November 5, 2021, January 26, 2022, April 12, 2022, and July 20, 2022, we again respectfully request that the Air Force rescind the Letter of Admonishment (LOA) issued to Maj Yarbrough on August 25, 2021. The Air Force lacked jurisdiction over Maj Yarbrough at the time of the alleged incident, and the events in question do not amount to misconduct.

**Background**

In early 2021, Senior Master Sergeant (SMSgt) Fish, USAF (Ret), invited Maj Yarbrough to participate at his June 11, 2021, retirement ceremony aboard the Battleship Missouri Memorial, in Pearl Harbor, Hawaii. Maj Yarbrough agreed to recognize SMSgt Fish's honorable service and delivered his remarks in uniform. Due to COVID-19 regulations at that time, total attendance at the ceremony was restricted to twenty-five attendees.

Maj Yarbrough participated in the ceremony in his personal, civilian capacity. The Department of the Air Force did not activate Maj Yarbrough or issue him orders to attend SMSgt

Fish's retirement ceremony. Maj Yarbrough did not request and the Air Force did not authorize Maj Yarbrough to participate in the retirement ceremony in his official capacity. The Air Force did not pay Maj Yarbrough or compensate him in any way, nor did it fund his travel from Texas to Hawaii and back. Instead, Maj Yarbrough—a reservist—took time off from his civilian job, made his own travel arrangements, and paid personally for his airfare, rental car, hotel, and meals.

Maj Yarbrough delivered his remarks on private property—not a military installation. The Navy decommissioned the USS Missouri in 1992, and in 1998 transferred its ownership to the USS Missouri Memorial Association, a private entity, whereby it became the Battleship Missouri Memorial. Ownership remains with the USS Missouri Memorial Association to this day.

Based on these facts, Maj Yarbrough traveled to, attended, and spoke at SMSgt Fish's retirement ceremony in his capacity as a friend and private citizen. Nevertheless, the Air Force issued Maj Yarbrough a LOA on August 25, 2021, after certain military members present at the ceremony complained about the content of Maj Yarbrough's speech.

On November 5, 2021, Maj Yarbrough, through First Liberty Institute as counsel, submitted a response to the LOA.  On December 17, 2021, the Air Force replied stating, "We ensured your letter and analysis was considered as part of Maj Yarbrough's response." However, like the LOA, the reply improperly relied on paragraph 2.1 in AFI 36-2907, *Adverse Administrative Actions*, May 22, 2020, as the basis for the Air Force having jurisdiction over Maj Yarbrough. The reply also failed to address Maj Yarbrough's position that his speech was fully protected by the First Amendment to the United States Constitution and mischaracterized by the Air Force as misconduct.  On January 26, 2022, Maj Yarbrough appealed the December 17, 2021, decision.

On February 4, 2022, the Air Force responded and once again improperly relied upon paragraph 2.1 in AFI 36-2907 as the basis for jurisdiction, while also suggesting that Maj Yarbrough's reference to OpJAGAF 2019-21, 30 April 2019, AIR NATIONAL GUARD in support of his jurisdictional argument was somehow incorrect. To be clear, the legal rationale in OpJAGAF 2019-21 is relevant and applicable despite the May 22, 2020, update to AFI 36-2907 because 10 U.S.C. § 802 is still the only statutory authority available for SECAF to exercise military jurisdiction over reservist Airmen who are subject to adverse administrative action. Congress did not grant SECAF the authority to expand the Air Force's jurisdictional reach to reservists in a civilian status. *See* 10 U.S.C. § 9013.[1]

---

[1] Specifically, pursuant to 10 U.S.C. § 9013(g):

"The Secretary of the Air Force may--
(1) assign, detail, and prescribe the duties of members of the Air Force, members of the Space Force, and civilian personnel of the Department of the Air Force;
(2) change the title of any officer or activity of the Department of the Air Force not prescribed by law; and
(3) *prescribe regulations to carry out his functions, powers, and duties under this title*." (emphasis added).

There is no support, either in the text of this Code provision or its legislative history, for the Air Force's position that Congress intended to grant SECAF the authority to expand the Air Force's jurisdictional reach over reservists in a civilian status.

On April 12, 2022, Maj Yarbrough appealed the decision to uphold the LOA, which was upheld by the Air Force in a letter dated April 18, 2022. He then appealed that decision on July 20, 2022.  This letter now serves as Maj Yarbrough's fifth appeal of the LOA.

**Legal Analysis**

1.  <u>The Air Force lacked jurisdiction over Maj Yarbrough at the time of his protected speech.</u>

Maj Yarbrough was not subject to military jurisdiction when, in civilian status and on a personal trip, he engaged in speech fully protected by the First Amendment. Articles 2(a) and 2(c) of the Uniform Code of Military Justice (UCMJ) define when the Department of Defense has jurisdiction over a service member.

Article 2(a) applies when the Department of Defense either calls or orders the member to active duty status, or while the member is in an inactive-duty training status. 10 U.S.C. § 802(a). The military's highest court describes this as an "all-or-nothing condition" for Article 2(a) jurisdiction to apply to a service member's conduct. *Duncan v. Usher*, 23 M.J. 29, 34 (C.M.A. 1986). "Simply being a member of a reserve component" is insufficient to confer jurisdiction. *United States v. Hale*, 78 M.J. 268, 271 (C.A.A.F. 2019); *see also United States v. Morita*, 74 M.J. 116 (C.A.A.F. 2015).

Article 2(c) determines jurisdiction based on the following four-part test: the person serving (1) submitted voluntarily to military authority; (2) was mentally competent at the time he voluntarily submitted to military authority; (3) received military pay and allowances; and (4) performed military duties. 10 U.S.C. § 802(c).

Because Maj Yarbrough was never ordered to active duty status and was not in an inactive-duty training status at the time he gave his speech, he was not subject to Article 2(a) jurisdiction. He also was not subject to Article 2(c) jurisdiction because he did not (1) submit to military authority, (2) receive military pay and allowances, or (3) perform military duties at the time of his speech. For these reasons, and because there is no sound statutory or legal basis for SECAF's unilateral and unauthorized expansion of military jurisdiction beyond 10 U.S.C. § 802 by way of AFI 36-2907,[2] the Air Force improperly issued an LOA to Maj Yarbrough for his protected speech

---

[2] SECAF's general authority to "prescribe regulations to carry out his functions, powers, and duties" under 10 U.S.C. § 9013 does not provide SECAF with the specific authority to unilaterally expand the Air Force's jurisdictional reach to reservists in a civilian status by way of an Air Force instruction, specifically AFI 36-2907, which allows "individuals in the member's administrative or operational chain of command" to issue an "administrative counseling, admonishment, and reprimands *to ARC Airmen who commit an offense while in civilian status*." Para. 2.1. (emphasis added). If SECAF seeks such authority, it must be granted by Congress.

on June 11, 2021. Therefore, the LOA should be rescinded because the Air Force's actions are unconstitutional.[3]

2. <u>Maj Yarbrough's speech is protected by the First Amendment and is not subject to adverse action.</u>

The Air Force should also rescind the LOA because Maj Yarbrough engaged in speech protected by the First Amendment to the U.S. Constitution during SMSgt Fish's retirement ceremony. Service members do not forfeit their First Amendment rights by virtue of their military service. And even under circumstances during which service members' rights of speech and expression may be abridged, the government cannot censor such speech in an arbitrary and capricious manner.

"It is axiomatic that the government may not regulate speech based on its substantive content or the message it conveys. *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 828 (1995) (citing *Police Dept. of Chicago v. Mosley*, 408 U.S. 92, 96 (1972)). This constitutional rule applies to the military with equal force. *Nieto v. Flatau*, 715 F. Supp. 2d 650, 655 (E.D.N.C. 2010) (quoting *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46 (1983)).

"[R]egulations that 'selectively grant[ ] safe passage to speech of which [officials] approve while curbing speech of which they disapprove' are impermissible, even in the military." *Nieto*, 715 F. Supp at 655. This is particularly true when the speech is made in a public employee's capacity as a private citizen on a matter of public concern, even if it may be critical in tone. *Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205*, 391 U.S. 563 (1968). "But learning how to tolerate speech . . . of all kinds is 'part of learning how to live in a pluralistic society,' a trait of character essential to 'a tolerant citizenry.'" *Kennedy v. Bremerton School District*, 142 S.Ct. 2407, 2430 (2022).

The Air Force's issuance of an LOA to Maj Yarbrough for his off-duty speech as a private citizen on a matter of public concern is nothing less than a discriminatory double standard intended to punish certain viewpoints. Indeed, the military has recently permitted service members to engage in a wide variety of expression even while on active duty and in uniform. In 2019, the military permitted service members in uniform to participate in a political parade "to show opposition to the Trump Administration's ban on transgender troops."[4] In support of this parade, the California Guard's 144th Fighter Wing conducted a four-ship, F-15 flyover, and military

---

[3] Acknowledging these statutory limitations on military jurisdiction, the Department of the Army Suitability Evaluation Board (DASEB) recently found that the Army had engaged in jurisdictional overreach after a National Guard service member, Captain Alan Kennedy, was disciplined for his participation in a Black Lives Matter protest in his off-duty status. On January 3, 2022, the DASEB retracted the General Officer Memorandum of Record (GOMOR) that was issued to Captain Kennedy in 2020, citing his violation of Department of Defense Instruction 1325.06, *Handling Protest, Extremist, and Criminal Gang Activities Among Members of the Armed Forces*. Because Captain Kennedy was not in a Title 10 duty status at the time he engaged in protest activities, the DASEB removed the GOMOR from Captain Kennedy's military records.
https://coloradonewsline.com/wp-content/uploads/2022/01/Kennedy_DASEB_Decision_03JAN22_redacted-1.pdf
[4] https://www.nbcsandiego.com/news/local/san-diego-unites-for-pride-parade-2019/132618

members conducted a public re-enlistment ceremony that, according to the parade organizer, was intended to "sen[d] the clear message, 'We are done with Trump's anti-transgender rhetoric.'"[5] According to media reports, approximately 250,000 spectators were present at the parade,[6] and to our knowledge, no disciplinary action was taken against the participating service members.

Furthermore, the LOA is arbitrary and capricious because it appears to admonish Maj Yarbrough because certain portions of his speech did not "remain apolitical." 5 U.S.C. §706, *Lewis v. Marsh*, 672 F. Supp. 14 (D.D.C. 1987). For example, the LOA cites Maj Yarbrough's charge that the audience "'let the lie come, but not through me.'" This is, as Maj Yarbrough's speech made clear, a direct quote from the work of Aleksandr Solzhenitsyn, an outspoken critic of communism who wrote on the topic through the lens of a faithful Christian, in which he admonishes his readers to refuse to lie or participate in false or dishonest conduct. Integrity is the Air Force's first and arguably "most important core value."[7] Simply put, encouraging integrity cannot be a punishable violation of the UCMJ.

As another example, the LOA appears to admonish Maj Yarbrough for stating that he "fear[ed] . . . 'radical political factions'" influencing the military. Warning against politicizing the military is utterly consistent with American military tradition and doctrine, even when such warnings are delivered in the context of and in direct response to recent political events and for the purpose of disseminating those warnings to the American public.[8] Warning against the politicization of the military does not qualify as "political speech" and does not violate the UCMJ.

By restricting Maj Yarbrough's June 11, 2021, speech as a private citizen, not on orders, on a matter of public concern, the Air Force has acted in an arbitrary and capricious manner and in violation of the First Amendment. Simply because military members expressed displeasure with Maj Yarbrough's speech at SMSgt Fish's retirement ceremony does not make it worthy of restriction or adverse action. For these reasons, the Air Force has no legal basis to restrict such speech and the LOA should be rescinded.

---

[5] *Id.*

[6] *Id.*

[7] https://www.jbcharleston.jb.mil/News/Commentaries/Display/Article/860665/integrity-our-most-important-core-value/

[8] *See, e.g.*, https://edition.cnn.com/2020/06/11/politics/milley-trump-appearance-mistake/index.html

Page 6
Maj J. Yarbrough
December 9, 2022

**<u>Conclusion</u>**

For the reasons set forth in our letters of November 5, 2021, January 26, 2022, April 12, 2022, July 20, 2022, and herein, and there being no jurisdictional or substantive basis for issuing adverse action against Maj Yarbrough for his June 11, 2021, protected speech, we respectfully request that you immediately rescind the LOA to avoid the need for further action.

Thank you for your consideration in this matter. Please contact us if necessary to discuss any aspect of this request.

Sincerely,

Michael Berry
Director of Military Affairs

Danielle A. Runyan
Senior Counsel

Antony B. Kolenc
Associate Clinical Professor of Law
Ave Maria School of Law

Attachments:

1. July 20, 2022 First Liberty Institute Response on Behalf of Maj Jace Yarbrough, USAFR, with attachments
9. July 29, 2022 USAF Response



**DEPARTMENT OF THE AIR FORCE**
**OFFICE OF THE JUDGE ADVOCATE GENERAL**
**MILITARY JUSTICE AND DISCIPLINE**

December 16, 2022

Brigadier General Gail E. Crawford
Director, Military Justice and Discipline
1500 West Perimeter Road, Suite 1330
Joint Base Andrews Naval Air Facility Washington, MD 20762

Mr. Michael Berry
General Counsel
First Liberty Institute
2001 W. Plano Pkwy, Suite 1600
Plano, TX 75075

Dear Mr. Berry,

I am writing on behalf of General B. Chance Saltzman, in response to your December 9, 2022 letter to him regarding your client, Major Jace Yarbrough.  In your correspondence, you have requested rescission of a Letter of Admonishment (LOA) issued to Maj Yarbrough, on August 25, 2021.  General Saltzman is not taking any action to rescind the LOA or any other actions regarding Maj Yarbrough.  This letter serves as my final action on your client's request to rescind the LOA.

Sincerely,

GAIL E. CRAWFORD
Brigadier General, USAF
Director