BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

C. SALVATORE D'ALESSIO, JR.
Director, Torts Branch

ANDREA W. MCCARTHY
Deputy Director, Torts Branch

SHMUEL BUSHWICK
Trial Attorney, Torts Branch
New York Reg. No.  5268271
New Jersey Reg. No. 073632013
U.S. Department of Justice
P.O. Box 7146, Ben Franklin Station
Washington, D.C. 20044
Tel (202) 305-0401; Fax: (202) 616-4314
E-mail: Shmuel.bushwick@usdoj.gov

*Counsel for Defendant General B. Chance Saltzman
in his Individual Capacity*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
Sherman Division**

-----------------------------------------------:
Jace Yarbrough,                                :
                                               :
              Plaintiff,                        :
        v.                                     :
                                               :        Case No. 4:23-cv-00876 (ALM)
The United States Space Force, *et al.*,        :
                                               :        **General Saltzman's Motion
                                               :        to Dismiss the Individual
              Defendants                        :        Capacity Claims**
                                               :
-----------------------------------------------:        ***ORAL ARGUMENT REQUESTED***

i

## TABLE OF CONTENTS

INTRODUCTION…………………………………………………………………………………1

FACTS ………………………………......................................................................................2

STATEMENT OF ISSUES ……………………………………………………………....….4

ARGUMENT…………………………………………………………………………………..4

 A. THE *FERES* DOCTRINE RENDERS CLAIMS FOR DAMAGES NON-JUSTICIABLE AND THE CLAIMS SHOULD THEREFORE BE DISMISSED UNDER FED. R. CIV. P. 12(B)(1)…………………4

 B. THE COURT LACKS PERSONAL JURISDICTION OVER GENERAL SALTZMAN BECAUSE HE DOES NOT HAVE MINIMUM CONTACTS WITH TEXAS…………………………………………6

 C. VENUE IS IMPROPER BECAUSE NOT ALL OF THE DEFENDANTS RESIDE IN TEXAS AND SUBSTANTIAL EVENTS DID NOT TAKE PLACE IN TEXAS…………………………………………8

 D. THE COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED………………………………………………………………………………… ...…11

  i. Plaintiff's *BIVENS* CLAIMS ARISE IN A NEW CONTEXT…………………………12

  ii. SPECIAL FACTORS COUNSEL HESITATION IN IMPLYING A DAMAGES REMEDY……………………………………………………………………………………….…14

 E. GENERAL SALTZMAN IS ENTITLED TO QUALIFIED IMMUNITY ON PLAINTIFF'S *BIVENS* AND RFRA CLAIMS…………………………………………………………………...16

  i. THE COMPLAINT DOES NOT IDENTIFY OR ALLEGE PERSONAL INVOLVEMENT ON THE PART OF GENERAL SALTZMAN……………………………………………………...…18

  ii. THERE IS NO CLEARLY ESTABLISHED RIGHT TO MAKE POLITICAL COMMENTARY IN UNIFORM………………………………………………………………………….…...18

  iii. PLAINTIFF HAS NOT IDENTIFIED A SUBSTANTIAL BURDEN ON HIS RELIGIOUS EXERCISE………………………………………………………………………………...21

CONCLUSION…………………………………………………………………….........23

# TABLE OF AUTHORITIES

Cases

*Air Sunshine, Inc. v. Carl,*
  663 F.3d 27 (1st Cir. 2011) ........................................................................................15
*Ajaj v. Fed. Bureau of Prisons,*
  25 F.4th 805 (10th Cir. 2022) ....................................................................................17
*Ashcroft v. al-Kidd,*
  563 U.S. 731 (2011) ....................................................................................................19
*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) .................................................................................... 11, 14, 18
*ATEN Int'l Co. v. Emine Tech. Co.,*
  261 F.R.D. 112 (E.D. Tex. 2009) ................................................................................9
*Atl. Marine Const. Co. v. United States Dist. Court,*
  571 U.S. 49 (2013) .......................................................................................................8
*Banks v. Garrett,*
  901 F.2d 1084 (Fed. Cir. 1990) ...........................................................................19, 22
*Biron v. Upton,*
  No. 19-10862, 2022 U.S. App. LEXIS 34739 (5th Cir. Dec. 14, 2022)....................17
*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,*
  403 U.S. 388 (1971) ..........................................................................................2, 12, 13
*Brown v. United States,*
  227 F.3d 295 (5th Cir. 2000) .......................................................................................5
*Butler v. Porter,*
  999 F.3d 287 (5th Cir. 2021) .....................................................................................13
*Byrd v. Lamb,*
  990 F.3d 879 (5th Cir. 2021) .....................................................................................13
*Camreta v. Greene,*
  563 U.S. 692 (2011) ....................................................................................................17
*Canada v. United States,*
  950 F.3d 299 (5th Cir. 2020) .....................................................................................14
*Carlson v. Green,*
  446 U.S. 14 (1980) ................................................................................................12, 13
*Chappell v. Wallace,*
  462 U.S. 296 (1983) ....................................................................................................16
*Crawford v. Texas Army Nat. Guard,*
  794 F.2d 1034 (5th Cir. 1986) .....................................................................................5
*Crittindon v. LeBlanc,*
  37 F.4th 177 (5th Cir. 2022) ......................................................................................12
*Cronn v. Buffington,*
  150 F.3d 538 (5th Cir. 1998) .....................................................................................18
*D.C. v. Wesby,*
  583 U.S. 48 (2018) ......................................................................................................12
*Davila v. Gladden,*
  777 F.3d 1198 (11th Cir. 2015) ..................................................................................17

*Davis v. Passman,*
    442 U.S. 228 (1979) ................................................................................................ 12, 13

*Doe v. Hagenbeck,*
    870 F.3d 36 (2d Cir. 2017) ............................................................................................ 16

*Dougherty v. United States Dep't of Homeland Sec.,*
    No. 22-40665, 2023 U.S. App. LEXIS 24807 (5th Cir. Sep. 19, 2023) ........................ 13

*Douglass v. Nippon Yusen Kabushiki Kaisha,*
    46 F.4th 226 (5th Cir. 2022) ............................................................................................ 6

*Egbert v. Boule,*
    596 U.S. 482 (2022) ...........................................................................................passim

*Emp. Div., Dept. of Hum. Res. of Oregon v. Smith,*
    494 U.S. 872 (1990) .............................................................................................. 5, 17

*Farshid v. Allen Indep. Sch. Dist.,*
    -- F.Supp.3d.--, No. 4:22-cv-00821, 2023 U.S. Dist. LEXIS 145435 (E.D. Tex. August 18, 2023) ..4

*Fazaga v. FBI,*
    965 F.3d 1015 (9th Cir. 2020) ....................................................................................... 17

*Feres v. United States,*
    340 U.S. 135 (1950) ....................................................................................................... 4

*Franklin v. Apple Inc.,*
    569 F.Supp.3d 465 (E.D. Tex. 2021) ............................................................................ 12

*Ganther v. Ingle,*
    75 F.3d 207 (5th Cir. 1996) ........................................................................................... 17

*Greer v. Spock,*
    424 U.S. 828 (1976) ...................................................................................................... 21

*Guerra v. Castillo,*
    82 F.4th 278 (5th Cir. 2023) ..................................................................... 11, 12, 16, 17

*In re Grimley,*
    137 U.S. 147 (1890) ...................................................................................................... 16

*In re Volkswagen of Am., Inc.,*
    545 F.3d 304 (5th Cir. 2008) ......................................................................................... 10

*Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.,*
    892 F.3d 719 (5th Cir. 2018) ......................................................................................... 12

*Klingenschmitt v. United States,*
    119 Fed. Cl. 163 (2014) ........................................................................................... 19, 22

*Langton v. Cheyond Commun., L.L.C.,*
    282 F. Supp. 2d 504 (E.D. Tex. 2003) ............................................................................ 7

*Lebron v. Rumsfeld,*
    670 F.3d 540 (4th Cir. 2012) ......................................................................................... 17

*Lineberry v. United States,*
    436 F. App'x 293 (5th Cir. 2010) .................................................................................. 18

*Locks v. Laird,*
    300 F. Supp. 915 (N.D. Cal. 1969) ............................................................................... 19

*Lovely v. United States,*
    570 F.3d 778 (6th Cir. 2009) ...................................................................................... 4, 5

*Miller v. U.S. Dep't of Agr. Farm Servs. Agency,*
    143 F.3d 1413 (11th Cir. 1998) ..................................................................................... 15

*Miller v. United States,*
    42 F.3d 297 (5th Cir. 1995) ............................................................................................. 5

*Morris v. Thompson,*
   852 F.3d 416 (5th Cir. 2017) ................................................................................ 4, 5

*Nunes v. NBCUniversal Media, LLC,*
   582 F. Supp. 3d 387 (E.D. Tex. 2022) ...................................................................... 6

*Pearson v. Callahan,*
   555 U.S. 223 (2009) .............................................................................................. 17

*Pettibone v. Russell,*
   59 F.4th 449 (9th Cir. 2023) ............................................................................ 14, 15

*Polnac v. City of Sulphur Springs,*
   555 F. Supp. 3d 309 (E.D. Tex. 2021) ...................................................................... 2

*Potts v. Holt,*
   617 F. App'x 148 (3d Cir. 2015) ............................................................................ 17

*Reichle v. Howards,*
   566 U.S. 658 (2012) .............................................................................................. 12

*Revell v. Lidov,*
   317 F.3d 467 (5th Cir. 2002) ................................................................................... 7

*Sangha v. Navig8 ShipManagement Priv. Ltd.,*
   882 F.3d 96 (5th Cir. 2018) .............................................................................. 6, 7, 8

*Sayers Constr., L.L.C. v. Timberline Constr., Inc.,*
   976 F.3d 570 (5th Cir. 2020) ............................................................................... 6, 7

*Schoemer v. United States,*
   59 F.3d 26 (5th Cir. 1995) ....................................................................................... 5

*Shields of Strength v. United States DOD,*
   -- F.Supp.3d --, 2023 U.S. Dist. LEXIS 79024 (E.D. Tex. May 5, 2023) ........................ 18

*Stafford v. Briggs,*
   444 U.S. 527 (1980) ................................................................................................ 9

*Stramaski v. Lawley,*
   44 F.4th 318 (5th Cir. 2022) .................................................................................. 12

*Stroman Realty, Inc. v. Wercinski,*
   513 F.3d 476 (5th Cir. 2008) ................................................................................... 8

*Tanzin v. Tanvir,*
   592 U.S. 43 (2020) ............................................................................................ 5, 17

*U.S. Navy Seals 1-26 v. Biden,*
   27 F.4th 336 (5th Cir. 2022) .................................................................................. 22

*United States v. Comrie,*
   842 F.3d 348 (5th Cir. 2016) ................................................................................. 22

*United States v. Stanley,*
   483 U.S. 669 (1987) ..................................................................................... 14, 15, 16

*Utterback v. Trustmark Nat'l Bank,*
   716 F. App'x 241 (5th Cir. 2017) ............................................................................. 8

*Vance v. Rumsfeld,*
   701 F.3d 193 (7th Cir. 2012) ................................................................................. 16

*W. Radio Servs. Co. v. U.S. Forest Serv.,*
   578 F.3d 1116 (9th Cir. 2009) ............................................................................... 15

*Walden v. Fiore,*
   571 U.S. 277 (2014) ............................................................................................ 7, 8

*Wilson v. James,*
   139 F. Supp. 3d 410 (D.D.C. 2015) .............................................................. 19, 20, 22

*Ziglar v. Abbasi*,
   582 U.S. 120 (2017) .................................................................................................13, 14, 15

## Statutes

10 U.S.C. § 1552.................................................................................................................15
10 U.S.C. § 771 ............................................................................................................ 16, 20
10 U.S.C. § 772 ............................................................................................................ 16, 20
10 U.S.C. § 938.................................................................................................................15
28 U.S.C. § 1391..................................................................................................................8
28 U.S.C. § 1391(b)..............................................................................................................9
28 U.S.C. § 1406(a)..............................................................................................................9
42 U.S.C. § 2000bb-1.........................................................................................................21
42 U.S.C. §§ 2000bb............................................................................................................2
5 U.S.C. § 408...................................................................................................................15
5 U.S.C. § 706...................................................................................................................15

## Rules

Fed. R. Civ. P. 12(b)(1)...................................................................................................... 1, 4
Fed. R. Civ. P. 12(b)(2)..........................................................................................................6
Fed. R. Civ. P. 12(b)(3)....................................................................................................... 8, 9
Fed. R. Civ. P. 12(b)(6).......................................................................................................11
Fed. R. Civ. P. 45(c)(1)(A)...................................................................................................11

## Regulations

19 Fed. Reg. 5295 (Aug. 18, 1954) .......................................................................................20
32 C.F.R. § 865.2...............................................................................................................15
68 Fed. Reg. 10631 (Feb. 28, 2003).......................................................................................20

## Other

DEPARTMENT OF DEFENSE INSTRUCTION 1334.01, WEARING OF THE UNIFORM (Oct. 26, 2005)....20
DEPARTMENT OF DEFENSE INSTRUCTION 1334.01, WEARING OF THE UNIFORM (Oct. 26, 2005)....20
DEPARTMENT OF DEFENSE DIRECTIVE 1344.10, POLITICAL ACTIVITIES BY MEMBERS OF THE
   ARMED FORCES (Feb. 19, 2008) .......................................................................................20
AIR FORCE INSTRUCTION 51-508, POLITICAL ACTIVITIES, FREE SPEECH AND FREEDOM OF
   ASSEMBLY (Oct. 12, 2018)...............................................................................................20
DEPARTMENT OF AIR FORCE INSTRUCTION 51-508, POLITICAL ACTIVITIES, FREE SPEECH AND
   FREEDOM OF ASSEMBLY OF AIR FORCE PERSONNEL (Mar. 24, 2023)...............................20

## GENERAL SALTZMAN'S MOTION TO DISMISS

Defendant General B. Chance Saltzman, in his individual capacity, moves for dismissal pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(3), and 12(b)(6).  Dismissal under Rule 12(b)(1) is appropriate because the Court lacks subject matter jurisdiction over the individual capacity claims under the *Feres* Doctrine.  Dismissal under Rule 12(b)(2) is proper because the Court lacks personal jurisdiction over General Saltzman.  Dismissal under Rule 12(b)(3) is appropriate because the Eastern District of Texas is an improper venue in which to bring these claims. Dismissal under Rule 12(b)(6) is appropriate because the Supreme Court has never recognized a *Bivens* remedy for a claimed First Amendment violation of any kind, and special factors counsel against the Court recognizing such a claim for the first time here.  It is also appropriate because General Saltzman is entitled to qualified immunity on Plaintiff's *Bivens* and RFRA claims because Plaintiff has not demonstrated the violation of any clearly established constitutional or statutory right.

## INTRODUCTION

On June 11, 2021, Plaintiff violated long-established military policy by offering political commentary while in uniform and in a manner suggesting Department of Defense endorsement of his positions.  He received a non-punitive administrative admonishment as a result.  General Saltzman was the last in a long line of military officials to reject Plaintiff's appeal of that reprimand.  Plaintiff, however, contends that the issuance and upholding of the reprimand violated his First Amendment rights of Free Speech and Free Exercise.  He brings claims against the Space Force, the Air Force, the Secretary of Defense, the Secretary of the Air Force, and General Saltzman in his official capacity.[1] He also sues General Saltzman personally, asserting claims for damages under the Religious Freedom

---

[1] The official capacity claims are being defended by the Department of Justice's Federal Programs Branch.

Restoration Act, 42 U.S.C. §§ 2000bb, *et seq.* (RFRA), and under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

Plaintiff's claims against General Saltzman in his individual capacity should be dismissed for a series of independent but complementary reasons.  First, the Court lacks subject matter jurisdiction over the individual capacity claims under the *Feres* Doctrine.  The Court also lacks personal jurisdiction over General Saltzman and the Eastern District of Texas is an improper venue in which to bring these claims.  Moreover, the Supreme Court has never recognized a *Bivens* remedy for a claimed First Amendment violation of any kind, and special factors counsel against the Court recognizing such a claim for the first time here.  Finally, General Saltzman is entitled to qualified immunity on Plaintiff's *Bivens* and RFRA claims because Plaintiff has not demonstrated the violation of any clearly established constitutional or statutory right.

## FACTS

Plaintiff is a military reservist assigned to a position with the U.S. Space Force.  (Dkt. #1 ¶¶ 62, 64).  He works and lives in the Dallas, TX, area.  (Dkt. #1 ¶ 64; Ex. 1-2 at 2).[2]  Between 2020 and 2021, he performed his military duties in Colorado. (Dkt. #1 ¶¶ 62, 63).

In June 2021, Plaintiff, while not on military orders, flew to Hawaii to attend the retirement ceremony of a fellow Service member.  (Dkt. #1 ¶ 8).  Plaintiff presided over the ceremony in his military uniform.  (Dkt. #1 ¶ 86; Exs. 1-4 at 2, 1-7 at 2, 1-8 at 2).  The event itself was limited to 25 people, which included Service members representing the Army, Navy, and Air Force.  (Dkt. #1 ¶ 84; Ex. 1-4 at 2).  Plaintiff offered his remarks while standing on a stage with a sound system.  (Exs. 1-4 at 2, 1-7 at 2, 1-8 at 2).  Members of the public stopped as they passed the event to listen and observe. (Exs. 1-4 at 2, 1-6 at 2, 1-7 at 2, 1-8 at 2).  Plaintiff's speech included comments about the military

---

[2] All the referenced exhibits may be considered part of the pleadings because they are referred to in the complaint and are central to Plaintiff's claims.  *See Polnac v. City of Sulphur Springs*, 555 F. Supp. 3d 309, 323 (E.D. Tex. 2021) (Mazzant, J.).

succumbing to a "radical political faction." (Ex. 1-1 at 5). He claimed that the Department of Defense and Service members had become politicized and needed to "compl[y] with the party message." (Ex. 1-1 at 6). He criticized a recent Department of Defense anti-extremism training as a "thinly veiled flex of political power." (Ex. 1-1 at 6). He encouraged the audience to challenge the "cancel culture" that, he opined, aligned with directives from higher levels of command. (Ex. 1-1 at 6-8).

At least one person in attendance complained about Plaintiff's remarks. (Dkt. #1 ¶ 11). In response, Plaintiff's military unit launched an internal investigation. (Dkt. #1 ¶ 105; Ex. 1 at 1). The unit found that Plaintiff acted improperly and his supervisor issued an administrative adverse action – a Letter of Admonishment ("LOA") – chastising Plaintiff for his conduct. (Dkt. #1 ¶ 108; Ex. 1).

Plaintiff then requested rescission of the LOA to his supervisor, who was stationed in Colorado. (Dkt. #1 ¶ 115; Ex. 2). His supervisor denied that request. (Dkt. #1 ¶ 116; Ex. 3). Plaintiff therefore began challenging the LOA by requesting that successively higher levels of officers rescind the LOA. He directed his first appeal to an officer in Patrick Space Force Base in Florida. (Dkt. #1 ¶ 117; Ex. 4). That officer's legal representative, based in Colorado, denied the request. (Dkt. #1 ¶ 118; Ex. 5). Plaintiff directed his second appeal to an officer (a one-star general) stationed in Colorado. (Dkt. #1 ¶ 119; Ex. 6). That officer rejected the appeal. (Dkt. #1 ¶ 120; Ex. 7). The third appeal was also directed to an officer (a three-star general) in Colorado. (Dkt. #1 ¶ 121; Ex. 8). That officer rejected the appeal. (Dkt. #1 ¶ 122; Ex. 9). In response, Plaintiff launched his fourth appeal, which he sent to General B. Chance Saltzman (a four-star general) in Washington, D.C. (Dkt. #1 ¶ 123; Ex. 10). Brigadier General Crawford, the Director of Military Justice and Discipline Directorate of the Air Force Judge Advocate General's Corps, responded to Plaintiff's appeal and rejected Plaintiff's arguments for rescission. (Dkt. #1 ¶ 124; Ex. 11).

## STATEMENT OF ISSUES

1.  Should this court dismiss the individual capacity claims pursuant to Fed. R. Civ. P. 12(b)(1) because the *Feres* Doctrine renders the claims non-justiciable?

2.  Should this court dismiss the individual capacity claims pursuant to Fed. R. Civ. P. 12(b)(2) because Plaintiff has not plead sufficient facts to establish personal jurisdiction over General Saltzman?

3.  Should this court dismiss the individual capacity claims pursuant to Fed. R. Civ. P. 12(b)(3) appropriate because not all of the defendants reside in Texas and the substantial events that gave rise to the Complaint took place in other jurisdictions?  In the alternative, should the court transfer the case to another District?

4.  Should this court dismiss the First Amendment individual capacity claim pursuant to Fed. R. Civ. P. 12(b)(6) because the claim arises in a new *Bivens* context and special factors counsel against extending implying a damages remedy?

5.  Should this court dismiss the individual capacity claims pursuant to Fed. R. Civ. P. 12(b)(6) because General Saltzman is entitled to qualified immunity?

## ARGUMENT

### A.  THE *FERES* DOCTRINE RENDERS CLAIMS FOR DAMAGES NON-JUSTICIABLE AND THE CLAIMS SHOULD THEREFORE BE DISMISSED UNDER FED. R. CIV. P. 12(B)(1).

This Court lacks subject matter jurisdiction because the *Feres* Doctrine renders both Plaintiff's claims against General Saltzman non-justiciable.  Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of a case for lack of subject-matter jurisdiction when the district court lacks statutory and constitutional power to adjudicate the case.  *Farshid v. Allen Indep. Sch. Dist.*, -- F. Supp. 3d --No. 4:22-cv-00821, 2023 U.S. Dist. LEXIS 145435, *5 (E.D. Tex. August 18, 2023) (Mazzant, J.).  "Once a defendant files a motion to dismiss under Rule 12(b)(1), the party invoking jurisdiction bears the burden of proof that jurisdiction does in fact exist."  *Id.* at *6 (internal quotations omitted).

Service members cannot pursue damages claims when their injuries are incident to military service.  *Feres v. United States*, 340 U.S. 135 (1950).  Although *Feres* concerned the Federal Tort Claims Act, the Fifth Circuit has held that *Feres* bars *all* lawsuits based on injuries incident to military service.  *See Morris v. Thompson*, 852 F.3d 416, 420 (5th Cir. 2017); *see also Lovely v. United States*, 570 F.3d 778,

782-83 (6th Cir. 2009) ("[I]n recent years the [Supreme] Court has embarked on a course dedicated to broadening the *Feres* doctrine to encompass, at a minimum *all* injuries suffered by military personnel that are even remotely related to the individual's *status* as a member of the military . . . .") (emphasis in original) (internal quotations omitted). The "incident to service" test is construed broadly and shields not only the United States but also individual Service members (including officers) from "any suit that might intrude upon military affairs, second-guess military decisions, or impair military discipline." *Morris*, 852 F.3d at 420 (citing *Miller v. United States*, 42 F.3d 297, 302 (5th Cir. 1995)). This doctrine has barred claims by members of the reserves, *Brown v. United States*, 227 F.3d 295 (5th Cir. 2000); National Guardsmen, *Schoemer v. United States*, 59 F.3d 26 (5th Cir. 1995); and ROTC students, *Lovely*, 570 F.3d 778.

With respect to his RFRA claim, Plaintiff cites to the Supreme Court's holding in *Tanzin v. Tanvir*, 592 U.S. 43 (2020), when he demands nominal damages for the injuries that he alleges. That opinion should not be read to overturn or narrow *Feres*. *Tanzin* comments on the availability of damages when a suit is otherwise justiciable. In rendering that decision, the Court reasoned that RFRA was designed to return litigants to the same protections they had prior to its decision in *Emp. Div., Dept. of Hum. Res. of Oregon v. Smith*, 494 U.S. 872 (1990), and referred to the remedies available under Section 1983. *Tanzin*, 592 U.S. at 50. *Feres*, however, is a bar to Section 1983 claims. *See, e.g., Crawford v. Texas Army Nat. Guard*, 794 F.2d 1034, 1036 (5th Cir. 1986). Thus, if RFRA litigants are meant to be aligned with Section 1983 plaintiffs, they too are barred from pursuing tort claims against the military and its officers. Although the Court did not discuss justiciability, it did note that damages under RFRA are available only "when appropriate." *Tanzin*, 592 U.S. at 52. It would certainly be inappropriate to recognize damages in a suit that the courts may not hear.

This case is a prime example of why injuries related to military service are non-justiciable. The nominal damages requested in this case would be the very definition of an intrusion upon military

affairs that would impair military discipline because it would attempt to hold a senior level officer individually liable in damages for upholding an administrative reprimand based upon a direct violation of a military regulation.  Accordingly, this court should dismiss Plaintiff's claims against General Saltzman under Rule 12(b)(1).

### B. THE COURT LACKS PERSONAL JURISDICTION OVER GENERAL SALTZMAN BECAUSE HE DOES NOT HAVE MINIMUM CONTACTS WITH TEXAS.

Dismissal is appropriate because the Complaint does not allege any facts that vest the Eastern District of Texas with personal jurisdiction over General Saltzman.

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) challenges a court's personal jurisdiction over a defendant.  *See* Fed. R. Civ. P. 12(b)(2).  "[F]ederal courts can exert power only over out-of-State defendants that are 'subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located.'"  *Sayers Constr., L.L.C. v. Timberline Constr., Inc.*, 976 F.3d 570, 573 (5th Cir. 2020) (quoting Fed. R. Civ. P. 4(k)(1)(A)).  Texas's long-arm statute aligns with the federal limits of due process, and the inquiry is therefore whether personal jurisdiction comports with the basic tenets of the Constitution.  *See Sangha v. Navig8 ShipManagement Priv. Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018).  In relevant part, due process requires that a defendant have minimum contacts with the state of filing and that exercising jurisdiction is consistent with "traditional notions of fair play and substantial justice."  *Id.*  The plaintiff bears the burden of proving the court's jurisdiction once a defendant raises the issue via a Rule 12(b)(2) motion.  *Douglass v. Nippon Yusen Kabushiki Kaisha*, 46 F.4th 226, 232 n.8 (5th Cir. 2022); *see also Nunes v. NBC Universal Media, LLC*, 582 F. Supp. 3d 387, 398 (E.D. Tex. 2022).

6

Specific jurisdiction[3] exists when a non-resident defendant purposefully availed himself (*i.e.*, intentionally directed his activities towards) the forum state and the litigation concerns or stems from those activities.  *See Sangha*, 882 F.3d at 101.  Phrased differently, jurisdiction is extended over individuals who have purposefully availed themselves of the privilege of conducting activities in the forum state and thereby invoked the benefits and protections of the forum's laws.  *Revell v. Lidov*, 317 F.3d 467, 470 (5th Cir. 2002).  This "purposeful availment" requirement is designed to protect defendants from having to litigate cases in forums where "they have only random, fortuitous, or attenuated contacts."  *Sayers Constr., L.L.C.*, 976 F.3d at 573.

For personal jurisdiction to lie, a *defendant's* contacts must create "a substantial connection with the forum State."  *Walden v. Fiore*, 571 U.S. 277, 284 (2014).  The plaintiff cannot be the sole link between the defendant and the forum – the minimum contacts underpinning jurisdiction must have been created by the defendant *himself* and must be *with the forum state* and not just people who reside there.  *Id.* at 284-85.  "[H]owever significant the plaintiff's contacts with the forum may be, those contacts cannot be decisive in determining whether the defendant's due process rights are violated."  *Id.* at 285 (internal citations omitted).

Here, as in *Walden*, it is clear that General Saltzman does not have minimum contacts with Texas.  In *Walden*, the plaintiffs brought suit in Nevada against a deputized DEA agent working in Georgia, who seized a suitcase of cash plaintiffs were attempting to transport to Nevada and later contributed to an affidavit to show probable cause for forfeiture proceedings in federal court in Georgia.  571 U.S. at 280.  The agent "never traveled to, conducted activities within, contacted anyone

---

[3] The broader concept of general jurisdiction is appropriate "when a defendant's contacts with the forum state are substantial and continuous and systematic but unrelated to the instant cause of action."  *Langton v. Cheyond Commun.*, L.L.C., 282 F. Supp. 2d 504, 508 (E.D. Tex. 2003) (internal citations omitted).  Plaintiff alleges no facts to suggest that General Saltzman has "continuous and systematic" contacts with the State of Texas.  These arguments therefore focus on the narrower jurisdictional question.

in, or sent anything [to] anyone to Nevada", and as such he had "formed no jurisdictionally relevant contacts with Nevada." *Id.* at 289.  The same is true here.  The only connections to Texas were created by Plaintiff, who lives and hired an attorney who practices there and received the final denial on the collateral challenge there.  *See* Ex. 2 at 1 (letter from Plaintiff's counsel directing the recipient to correspond with him only).  This one-time correspondence, sent on General Saltzman's behalf "through his agent," (Dkt. # 1 ¶ 31), to Plaintiff's attorney in Texas (at Plaintiff's request) is plainly insufficient to establish personal jurisdiction.  In *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 483-84 (5th Cir. 2008), the Court of Appeals held that sending a cease-and-desist order to the plaintiff in Texas and corresponding with the plaintiff's attorneys was not enough to show that the defendant had personally availed herself of the benefits of Texas law.

Plaintiff has not demonstrated that General Saltzman has minimum contacts with Texas and that exercising jurisdiction is consistent with "traditional notions of fair play and substantial justice." *See Sangha*, 882 F.3d at 101.  Accordingly, this Court should dismiss Plaintiff's claims under Rule 12(b)(2).

## C.  VENUE IS IMPROPER BECAUSE NOT ALL OF THE DEFENDANTS RESIDE IN TEXAS AND SUBSTANTIAL EVENTS DID NOT TAKE PLACE IN TEXAS.

The Eastern District of Texas is an improper forum for the personal-capacity claims against General Saltzman because not all of the defendants reside in Texas and the substantial events that gave rise to the Complaint took place in other jurisdictions.

Federal Rule of Civil Procedure 12(b)(3) allows a defendant to move to dismiss a case for improper venue.  "[V]enue is designed to protect the defendant against the risk that a plaintiff will select an unfair or inconvenient place of trial." *Utterback v. Trustmark Nat'l Bank*, 716 F. App'x 241, 244 (5th Cir. 2017) (internal citations omitted).  Venue is governed by 28 U.S.C. § 1391.  *Atl. Marine Const. Co. v. United States Dist. Court*, 571 U.S. 49, 55 (2013).  Venue over the individual capacity claims

against General Saltzman must be assessed under 28 U.S.C. § 1391(b).  *See Stafford v. Briggs*, 444 U.S. 527, 542-44 (1980) (explaining that 28 U.S.C. § 1391(e) does not apply to federals employees sued in an individual capacity).  Section 1391(b) lists three situations where venue is appropriate:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

When venue is deficient, courts are empowered to elect between dismissing the case and, if the interests of justice so demand, transferring it to a court where venue would be proper.  *See* 28 U.S.C. § 1406(a).  The burden of proof on a Rule 12(b)(3) motion shifts to the plaintiff once the defendant raises the issue.  *See, e.g., ATEN Int'l Co. v. Emine Tech. Co.*, 261 F.R.D. 112, 120 (E.D. Tex. 2009).

As noted in the preceding section, the complaint does not contain any factual allegations to suggest that General Saltzman resides in Texas.[4]  *See* Section B, *supra*.  Therefore, the first factor under 1391(b) is not satisfied, because it requires that *all* defendants reside in a state for venue to be appropriate there.  Nor is the second factor satisfied.  Section 1391(b)(2) directs the court to look to the events that form a substantial part of the underlying facts.  The originating event here took place in Hawaii.  (Dkt. #1 ¶ 8).  The LOA was issued in Colorado.  *See* LOA and Rescission Request, Exs. 1, 2.  The request to rescind the LOA was directed to Colorado.  (Ex. 2).  The response to that request

---

[4] It bears mention that Plaintiff also has no connection to the Eastern District of Texas as he both lives and works in Dallas, *see* (Dkt. #1 ¶ 65), Ex. 1-2), which is situated in the Northern District of Texas.

was issued from Colorado.  (Ex. 3).  Plaintiff's first appeal was directed to Patrick Space Force Base in Florida.  (Ex. 4).  The response to that appeal came from Colorado.  (Ex. 5).  The second appeal was directed to Colorado.  (Ex. 6).  The response to that appeal came from Colorado.  (Ex. 7).  The third appeal was directed to Colorado.  (Ex. 8).  The response to that challenge was issued from Colorado.  (Ex. 9).  The fourth appeal – the only one involving General Saltzman – was directed to Washington, D.C.  (Ex. 10).  The response to that appeal was issued from Maryland.  (Ex. 11).  The only "event" that can be said to have taken place in the Eastern District of Texas is the receipt, by Plaintiff's counsel, of the responses to his appeals.

The events giving rise to this action are the speech in Hawaii, the issuance of the LOA, and the rejections by the chain of command of Plaintiff's appeals.  None of those events took place in the Eastern District of Texas.  Accordingly, venue does not lie here, and this matter should be dismissed.

To the extent that any venue is appropriately situated to hear these claims, it is the United States District Court for the District of Colorado.  Were this court to consider transferring the claims against General Saltzman in lieu of dismissing them, that decision would be governed by the private and public interest factors identified in *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008).  The non-exhaustive private interest factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive."  *Id.* (internal citations omitted).  The similarly non-exhaustive public interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law."  *Id.* (internal citations omitted).

In terms of the private interest factors, it would be relatively easier to access the sources of proof – the witnesses identified by their involvement in the LOA and Plaintiff's collateral challenges – since the compulsory process to reach those witnesses must be within 100 miles of the courthouse, *see* Fed. R. Civ. P. 45(c)(1)(A), and Plaintiff has not alleged that they can be reached within 100 miles of this court; accessibility to the airport nearest to Sherman, TX, is limited, which means that there will be increased costs in having witnesses attend proceedings in the District; and the fact that many witnesses are affiliated with the military means that the proximity to a military installation will remove practical problems and make trial easier, more expeditious, and less expensive.

With regard to the public interest factors, there is no particular local interest for the court in this matter as the issues raised are of national concern; the law that will govern the matter is a blend of constitutional issues and military regulations, which makes a district that frequently deals with military concerns more appropriate.

### D. The Complaint Fails to State a Claim Upon Which Relief Can Be Granted.

Plaintiff's claims fail because no *Bivens* remedy is available and because General Saltzman is entitled to qualified immunity on Plaintiff's *Bivens* and RFRA claims.

Dismissal under Federal Rule of Civil Procedure 12(b)(6) is appropriate when the facts in a complaint, taken as true, fail to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions, conclusory statements, naked assertions, and factual allegations that do not rise above the speculative level are not facially plausible. *Guerra v. Castillo*, 82 F.4th 278, 284 (5th Cir. 2023). "Generally, a court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court

may take judicial notice." *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 726 (5th Cir. 2018) (internal citations omitted); *see also Franklin v. Apple Inc.*, 569 F. Supp. 3d 465, 476-77 (E.D. Tex. 2021) (Mazzant, J.). This pleading standard is unaltered when a motion to dismiss is based upon qualified immunity. *Guerra*, 82 F.4th at 285. A plaintiff cannot overcome a qualified immunity defense unless the complaint demonstrates the violation of a statutory or constitutional right that was clearly established at the time of the alleged violation. *See Stramaski v. Lawley*, 44 F.4th 318, 328 (5th Cir. 2022). For a right to be clearly established, there must be cases of "controlling authority" or "a robust consensus of cases of persuasive authority," that place the constitutional or statutory question "beyond debate." *Crittindon v. LeBlanc*, 37 F.4th 177, 186, 202 (5th Cir. 2022) (internal citations omitted); *see also Reichle v. Howards*, 566 U.S. 658, 664 (2012). "It is not enough that the rule is suggested by then-existing precedent." *D.C. v. Wesby*, 583 U.S. 48, 63 (2018). The precedent at the time must have squarely governed the facts at hand. *Crittindon*, 37 F.4th at 202.

### i. PLAINTIFF'S *BIVENS* CLAIMS ARISE IN A NEW CONTEXT.

In *Bivens*, 403 U.S. 388, the Supreme Court recognized a cause of action for damages against federal employees in their individual capacities after federal narcotics agents were accused of violating the Fourth Amendment by conducting an unreasonable, warrantless search. *See Egbert v. Boule*, 596 U.S. 482, 490-91 (2022). The Supreme Court has only twice extended that holding. *See Davis v. Passman*, 442 U.S. 228 (1979) (Fifth Amendment claim based on a Congressman's firing of a female staffer on the basis of sex); *Carlson v. Green*, 446 U.S. 14 (1980) (Eighth Amendment claim for failure to provide medical attention to asthmatic federal prisoner). It has directed lower courts to approach *Bivens* claims with caution and avoid recognizing new causes of action if there is even a single rational reason to defer to Congress, which is better positioned to determine what should and should not become a cause of action. *See Egbert*, 596 U.S. at 490-91.

12

Courts approaching *Bivens* claims must first ask "whether the case presents a new *Bivens* context – *i.e.*, is it meaningfully different from the three cases in which the Court has implied a damages action." *Id.* at 492 (internal quotations omitted); *see also Byrd v. Lamb*, 990 F.3d 879, 882 (5th Cir. 2021). A non-exhaustive list of meaningful differences includes:

> The rank of the officers involved; the constitutional right at issue; the generality or specificity of the official actions; the extent of judicial guidance as to how an officer should respond to the problem . . . ; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Ziglar v. Abbasi*, 582 U.S. 120, 139-40 (2017). Whenever a case presents a new context, a court must determine whether it is appropriate to "expand[]" *Bivens* into that context, mindful that doing so is "a disfavored judicial activity." *Id.* at 135 (internal citation omitted). Courts should consider "any alternative, existing process[es] for protecting the [injured party's] interest," as well as any "special factors counselling hesitation" in implying a remedy. *Id.* at 136-37. "[S]eparation-of-powers principles" are "central to th[is] analysis." *Id.* at 135. The court should ask "whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id.* at 136. "The answer most often will be" no. *Id.* at 135.

Plaintiff's claim here is meaningfully different from the trinity of cases in which a *Bivens* cause of action have been recognized. The constitutional violations Plaintiff asserts are based in the First Amendment. (Dkt. #1 ¶ 237). Both the Supreme Court and the Fifth Circuit, however, have held claims under the First Amendment necessarily arise in a new context. *Egbert*, 596 U.S. at 498; *Dougherty v. United States Dep't of Homeland Sec.*, No. 22-40665, 2023 U.S. App. LEXIS 24807 at 12-13 (5th Cir. Sep. 19, 2023); *Butler v. Porter*, 999 F.3d 287, 293 (5th Cir. 2021). Furthermore, *Bivens*, *Davis*, and *Carlson* all arose in the civilian environment and were based on the direct actions of the individually named defendants. *See generally Bivens*, 403 U.S. at 389; *Davis*, 442 U.S. at 230; *Carlson*, 446 U.S. at 16, n. 1.

13

Plaintiff's First Amendment claim for damages arises in the military environment and attempt to hold General Saltzman vicariously liable for the conduct of his subordinate.  (Dkt. #1 ¶ 124).  Those distinctions are meaningful.  *See, e.g., United States v. Stanley*, 483 U.S. 669, 684 (1987) (rejecting *Bivens* claims that "arise out of or are in the course of activity incident to [military] service"); *Iqbal*, 556 U.S. at 676 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."); *see also Pettibone v. Russell*, 59 F.4th 449, 455 (9th Cir. 2023) (finding new context where the defendant did not "personally" engage in the alleged unconstitutional conduct).

Plaintiff's First Amendment for damages claim clearly arises in a new context.  As a result, the court must consider whether special factors counsel against recognizing that claim.

### ii.  SPECIAL FACTORS COUNSEL HESITATION IN IMPLYING A DAMAGES REMEDY.

Once a court identifies a new context, it must next determine whether there is even a single special factor present suggesting that Congress is better equipped to weigh the social costs and benefits of permitting a cause of action for damages to proceed.  *See Egbert*, 596 U.S. at 491; *Canada v. United States*, 950 F.3d 299, 309 (5th Cir. 2020) (stating that courts must refrain from creating an implied cause of action when special factors are present).  This analysis is rooted in separation-of-powers concerns.  *See Abbasi*, 582 U.S. at 135-36.

The presence of an alternative remedial structure can, in and of itself, limit the court's power to create a new *Bivens* cause of action.  *Id.* at 137.  The adequacy of an alternative remedial structure is also a question for the legislative branch and not the judiciary.  "So long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy."  *Egbert*, 596 U.S. at 498.  Plaintiff had and has multiple alternative remedial structures available to him.  First, Plaintiff is

pursuing injunctive relief.  The availability of an avenue to pursue injunctive relief is "of central importance" in deciding whether to imply a *Bivens* remedy.  *Abbasi*, 582 U.S. at 144; *accord Dudley v. United States*, No. 4:19-cv-317-O, 2020 U.S. Dist. LEXIS16856, at *22 (N.D. Tex. Feb. 3, 2020) (finding the ability to seek an injunction was an alternative remedy precluding a *Bivens* claim).  The Administrative Procedure Act ("APA"), for example, allows for judicial review of final agency actions and provides for various forms of relief. *See* 5 U.S.C. § 706.  Courts have consistently declined to supplement the APA's procedures with a judicially implied cause of action under *Bivens.  See, e.g., Air Sunshine, Inc. v. Carl*, 663 F.3d 27, 37 (1st Cir. 2011); *W. Radio Servs. Co. v. U.S. Forest Serv.*, 578 F.3d 1116, 1123 (9th Cir. 2009); *Miller v. U.S. Dep't of Agr. Farm Servs. Agency*, 143 F.3d 1413, 1416 (11th Cir. 1998).

Plaintiff also has three military-specific alternative remedial structures available.  He can raise his concerns to his chain of command, *see* 10 U.S.C. § 938 (obligating action by senior military officials when a Service member claims he was wronged by his commanding officer and denied redress), or to the Department of Defense Inspector General, *see* 5 U.S.C. § 408; *see also Pettibone*, 59 F.4th at 456 (recognizing that an Inspector General created pursuant to the Inspector General Act of 1978 qualifies as an alternative remedy under *Bivens*).  The allegations suggest that Plaintiff pursued the former.  *See generally* Dkt. #1 ¶¶ 117-25.  That he may have been dissatisfied with the result is irrelevant. *See Egbert*, 596 U.S. at 499.  Finally, Plaintiff could petition the Air Force Board for Correction of Military Records to remove the LOA from his personnel file.  *See* 10 U.S.C. § 1552; 32 C.F.R. § 865.2.

Moreover, the Supreme Court has long held that "no *Bivens* remedy is available for injuries that arise out of or are in the course of activity incident to [military] service." *Stanley*, 483 U.S. at 684 (internal quotations omitted).  The Constitution explicitly provides Congress with the responsibility to regulate the "land and Naval forces." U.S. Const., Art. I, § 8, cl. 14.  Congress, in turn, directed the Executive Branch to determine when it would be appropriate for Service members to wear their

military uniforms and what conduct is acceptable in their uniforms.  *See* 10 U.S.C. §§ 771 – 72; *see also* Section E.ii., *infra*.  Recognizing an independent cause of action in this circumstance would "place great stress on the separation of powers," *Egbert*, 596 U.S. at 497, n.3, because it would require the judiciary to insert itself into powers explicitly assigned to a co-equal branch of government.

A *Bivens* remedy is not available here because it would interfere with the unique disciplinary needs of the military and the relationship between Service members and their command—a relationship that is without parallel in the civilian world.  *See Chappell v. Wallace*, 462 U.S. 296, 298-304 (1983); *Stanley*, 483 U.S. at 683.  The military "is not a deliberative body.  It is the executive arm.  Its law is that of obedience.  No question can be left open as to the right to command in the officer, or the duty of obedience in the soldier." *In re Grimley*, 137 U.S. 147, 153 (1890).  Officers must be able to control this environment and take decisive action without fear that they will be subject to personal liability at the hands of their subordinates.  *See Chappell*, 462 U.S. at 304.  This includes reprimanding when appropriate.  Because of the distinctive nature of the military, courts have uniformly held that the Legislative Branch would be better positioned to recognize a cause of action that alters the relationship between an officer and their subordinate.  *See, e.g., Doe v. Hagenbeck*, 870 F.3d 36 (2d Cir. 2017); *Vance v. Rumsfeld*, 701 F.3d 193 (7th Cir. 2012).  Because there are special factors present, the Court should refrain from recognizing a *Bivens* cause of action.

### E.  GENERAL SALTZMAN IS ENTITLED TO QUALIFIED IMMUNITY ON PLAINTIFF'S *BIVENS* AND RFRA CLAIMS.

Even if this court disagrees with General Saltzman's jurisdictional arguments and determines that a *Bivens* remedy is available, dismissal is nevertheless appropriate because he is entitled to qualified immunity on all claims asserted against him.  Once a defendant raises the shield of qualified immunity, the plaintiff bears the burden of demonstrating that the immunity is unavailable.  *Guerra*, 82 F.4th at 285.  In order to meet that burden, the complaint must set forth facts showing (1) that the official

violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the alleged misconduct. *Id.* The Supreme Court has directed lower courts to use discretion in deciding which prong to address first and has noted that "courts should think hard, and then think hard again, before turning small cases into large ones." *Camreta v. Greene*, 563 U.S. 692, 707 (2011); *see also Pearson v. Callahan*, 555 U.S. 223, 225 (2009) (identifying a non-exhaustive list of reasons why courts should begin with the second prong).

General Saltzman is entitled to qualified immunity on both the *Bivens* and the RFRA claims. In *Tanzin*, the Supreme Court explained that the RFRA provided "the same avenues of relief against officials that they would have had before [its decision in *Employment Division v.*] *Smith*," including a "damages claim [for] clearly established violations of the First Amendment." 592 U.S. at 51 (citing *Smith*, 494 U.S. 872). As the Supreme Court's use of the term "clearly established" implies, such claims would have been subject to the defense of qualified immunity. The Fifth Circuit has also assumed that the defense is available to federal officials sued under RFRA. *See Biron v. Upton*, No. 19-10862, 2022 U.S. App. LEXIS 34739, at *4 (5th Cir. Dec. 14, 2022). In *Biron*, the Circuit noted that it had previously "appl[ied] the qualified immunity analysis to a RFRA claim against state officials before RFRA was limited to apply only to federal officials," and thus the defense would naturally extend to claims against federal officials as well. *Id.* at *4 n.1 (citing *Ganther v. Ingle*, 75 F.3d 207, 211 (5th Cir. 1996)). That conclusion is consistent with the decisions of other circuits that have addressed the question. *See Ajaj v. Fed. Bureau of Prisons*, 25 F.4th 805, 813 (10th Cir. 2022); *Fazaga v. FBI*, 965 F.3d 1015, 1061 (9th Cir. 2020), *rev'd and remanded on other grounds*, 595 U.S. 344 (2022); *Davila v. Gladden*, 777 F.3d 1198, 1210 (11th Cir. 2015); *Potts v. Holt*, 617 F. App'x 148, 150-51 (3d Cir. 2015); *Lebron v. Rumsfeld*, 670 F.3d 540, 557 (4th Cir. 2012). Moreover, as another court in this District has recognized, applying qualified immunity in RFRA cases would be consistent with the law's legislative history and Congress's intent for that statute "to restore the compelling interest test" in religious freedom cases.

*Shields of Strength v. United States DOD*, -- F. Supp. 3d --, 2023 U.S. Dist. LEXIS 79024, at *39 (E.D. Tex. May 5, 2023) (Barker, J.).

### i. THE COMPLAINT DOES NOT IDENTIFY OR ALLEGE PERSONAL INVOLVEMENT ON THE PART OF GENERAL SALTZMAN.

General Saltzman is entitled to qualified immunity because Plaintiff has not plausibly alleged that he personally participated in the alleged unconstitutional conduct.  In an individual-capacity suit, "a plaintiff must plead that each Government-official defendant, *through the official's own individual actions*, has violated the Constitution." *Iqbal*, 556 U.S. at 676 (emphasis added); *see also Lineberry v. United States*, 436 F. App'x 293, 295 (5th Cir. 2010) (dismissing *Bivens* claim against BOP Director for failure to allege personal involvement where the plaintiff's "conclusional allegations are not supported by any specific facts showing [the Director's] personal involvement in the daily operation of the prison, or that [the Director] *personally implemented* a deficient policy resulting in a constitutional violation") (emphasis added); *Cronn v. Buffington*, 150 F.3d 538, 544 (5th Cir. 1998).  Plaintiff alleges that he submitted a collateral challenge to General Saltzman and that Brigadier General Crawford responded with a denial.  (Dkt. #1 ¶¶ 123-24).  He does not allege sufficient facts to establish that General Saltzman was involved in that process or that he even knew about the challenge.  The letter was not issued by General Saltzman or a member of his immediate staff.  Without more, the Complaint lacks plausible information regarding General Saltzman's personal involvement and qualified immunity is appropriate.

### ii. THERE IS NO CLEARLY ESTABLISHED RIGHT TO MAKE POLITICAL COMMENTARY IN UNIFORM.

General Saltzman is entitled to qualified immunity on the *Bivens* claim because he did not violate any clearly established constitutional right.  The "right" Plaintiff invokes is for a military reservist to exercise his religion by making faith-based political commentary and contemptuous remarks about his superior officers while in uniform and in public.  There is no Supreme Court or

Fifth Circuit case clearly establishing such a right at issue, nor is there a robust consensus of persuasive authority placing "constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

In *Locks v. Laird*, 300 F. Supp. 915, 918 (N.D. Cal. 1969), *aff'd on other grounds*, 441 F.2d 479 (9th Cir. 1971), Airmen on Active Duty challenged an Air Force regulation that limited their ability to wear their uniforms at public demonstrations critical of the Department of Defense.  The court found that "[t]here is no constitutional right of a member of the Air Force to wear his uniform when and wherever he pleases" and that a limitation on the wear of the uniform during political situations does not run afoul of the First Amendment.  Other cases have also consistently emphasized the difference between conduct in and out of the uniform.  *See, e.g., Klingenschmitt v. United States*, 119 Fed. Cl. 163, 193 (2014) (finding no violation of RFRA when Navy chaplain was prohibited from offering prayers at a political event while in uniform).  Furthermore, in *Banks v. Garrett*, 901 F.2d 1084 (Fed. Cir. 1990), the Federal Circuit found that a senior naval reserve officer was acting in his "official capacity" when he shared political opinions using his official letterhead and official signature block.  It expressly rejected the plaintiff's argument that he was not a "person in the naval service," and therefore not subject to the applicable Navy regulation, because he was a reserve officer.  *Id.* at 1086.

Plaintiff cites to *Wilson v. James*, 139 F. Supp. 3d 410 (D.D.C. 2015), to contend that the Air Force previously conceded that its "regulations do not apply to the 'off-duty conduct' of members who are not on active duty." (Dkt. # 1 ¶ 143).  The case actually supports General Saltzman's position.  The *Wilson* plaintiff, an enlisted member of the Air National Guard, received two separate administrative reprimands.  The first concerned the use of his official military e-mail account (to include his official signature block) to e-mail a senior officer at a separate military institution and criticize that institution's willingness to allow same-sex couples to wed in its chapel. *Wilson*, 139 F. Supp. 3d at 418-19.  The second concerned a negative post about his commander on Facebook.  *Id.* at 421.  Although the Air Force accepted that the regulation at issue in *Wilson* did not apply to that

plaintiff's particular conduct (his off-duty Facebook post), *id.* at 429, the court took no issue with the first reprimand because it was based on his use of his military e-mail account to military officials and thus had an air of official sanction. *Id.* at 425-26.  Similarly, Plaintiff's reprimand concerned conduct he took while in military uniform that was suggestive of official, as opposed to purely private, speech.

These cases, along with an array of statutes and regulations, establish that the Secretary of Defense has broad authority to regulate the conduct of Service members while they are in uniform, even when they are not on active duty, and that this authority includes regulations of those Service members' speech that may discredit the military or may be understood as giving the speech official sanction.  *See* 10 U.S.C. §§ 771 – 72; Exec. Order No. 10554, 19 Fed. Reg. 5295 (Aug. 18, 1954) (as amended by Exec. Order No. 13286, 68 Fed. Reg. 10631 (Feb. 28, 2003)).  At the time of Plaintiff's actions, Service members were prohibited from wearing the uniform in situations that might tend to bring discredit to the military or could reasonably give rise to an inference that the Department of Defense officially sanctions individual political positions.  *See* DEPARTMENT OF DEFENSE INSTRUCTION 1334.01, WEARING OF THE UNIFORM, para. 3.1.4 (Oct. 26, 2005) (attached as Exhibit 12) *repealed and superseded by* DEPARTMENT OF DEFENSE INSTRUCTION 1334.01, WEARING OF THE UNIFORM (JULY 13, 2021); DEPARTMENT OF DEFENSE DIRECTIVE 1344.10, POLITICAL ACTIVITIES BY MEMBERS OF THE ARMED FORCES, paras. 4 and 4.1.4 (Feb. 19, 2008) (extending the restriction to Airmen not on Active Duty); AIR FORCE INSTRUCTION 51-508, POLITICAL ACTIVITIES, FREE SPEECH AND FREEDOM OF ASSEMBLY, para. 2.4.2 (Oct. 12, 2018) (attached as Exhibit 13) ("[A] member of the [Air Force] not on active duty may take the actions and participate in the activities prohibited [earlier in the regulation], *provided the member is not in uniform* and does not otherwise act in a manner that could reasonably give rise to the inference or appearance of official sponsorship, approval, or endorsement.") (emphasis added) *repealed and superseded by* DEPARTMENT OF AIR FORCE INSTRUCTION 51-508, POLITICAL ACTIVITIES, FREE SPEECH AND FREEDOM OF ASSEMBLY OF AIR FORCE

PERSONNEL (Mar. 24, 2023).  That prohibition is rooted in the military's tradition of remaining apolitical.  *See Greer v. Spock*, 424 U.S. 828, 839 (1976) (referencing "the American constitutional tradition of a politically neutral military under civilian control.").

Plaintiff shared his personal, political beliefs about the Department of Defense and efforts to combat extremism in the ranks while wearing his military uniform and presiding over a military ceremony.  (Dkt. #1 ¶¶ 8, 86; Exs. 1-1 at 5-8; 1-4 at 2, 1-7 at 2, 1-8 at 2).  He did so on a stage, using a sound system, as members of the public walked by and stopped to observe.  (Exs. 1-4 at 2, 1-6 at 2, 1-7 at 2, 1-8 at 2).  He encouraged the Service members present to challenge the anti-extremism efforts in place.  (Ex. 1-1 at 6-8).  Much like the use of an official e-mail address, signature block, or letterhead, the fact that he made his remarks while wearing his uniform gave his comments an air of official sanction; his actions directly violated the regulations that were in place at the time.  There was no consensus of persuasive authority to believe that this conduct was protected under the First Amendment, let alone that upholding an administrative response to it violated any clearly established right.  As a result, General Saltzman is entitled to qualified immunity on Count VII.

### iii. PLAINTIFF HAS NOT IDENTIFIED A SUBSTANTIAL BURDEN ON HIS RELIGIOUS EXERCISE.

The Complaint fails to allege how not rescinding the LOA violated clearly established law under RFRA.  RFRA provides that the "[g]overnment shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability," unless the challenged conduct is: (1) "in furtherance of a compelling government interest;" and (2) "the least restrictive means of furthering that compelling governmental interest."  42 U.S.C. § 2000bb-1.  "To claim RFRA's protections, a person must show that (1) the relevant religious exercise is grounded in a sincerely held belief and (2) the government's action or policy substantially burdens that exercise by, for example, forcing the plaintiff to engage in conduct that seriously violates his or her religious

beliefs." *United States v. Comrie*, 842 F.3d 348, 351 (5th Cir. 2016) (citations omitted).  "Only if the religious person carries this burden does the government bear the burden of proof to show that its action or policy (1) is in furtherance of a compelling government interest and (2) is the least restrictive means of furthering that interest." *Id.*

Plaintiff's allegations do not rise to the level of imposing a "substantial burden" as that term is defined in clearly established law.  Plaintiff claims (for the first time since the LOA was issued) that he has a sincerely held religious belief requiring him to publicly profess his perception of the truth. (Dkt. #1 ¶¶ 9, 10, 97, 100).  He claims that he was substantially burdened by the LOA because it labeled his actions "insubordinate, disrespectful, and unbecoming of an officer in the military" and references concerns that future comments he may make as a civilian will result in military discipline. (Dkt. #1 ¶¶ 127, 156).  "[A] government action or regulation creates a substantial burden on religious exercise if it *truly pressures* the adherent to *significantly modify* his *religious* behavior and significantly violates his religious beliefs." *U.S. Navy Seals 1-26 v. Biden*, 27 F.4th 336, 350 (5th Cir. 2022) (emphasis added). Plaintiff does not state that his religious beliefs demand that he share his view of the truth while in uniform and in public. The applicable military regulations mentioned in the preceding section and the LOA do not take issue with Plaintiff publicly sharing his view of the truth.  They do restrict, however, his ability to offer that political commentary *while in uniform*.  *See Wilson*, 139 F. Supp. 3d at 425-26 (the restrictions and reprimand "did not bar him from voicing [his positions] in other fora or by other means, and certainly not in his private affairs.").  Requiring Plaintiff to share his personal views out of uniform does not require him to modify his beliefs or his religious behavior.  All of the courts that have addressed similar questions reached that same conclusion.  *See Klingenschmitt*, 119 Fed. Cl. at 193 (requiring plaintiff to abstain from offering a prayer at a political event while in uniform did not violate the First Amendment or RFRA rights); *Banks*, 901 F.2d at 1089; *Wilson*, 139 F. Supp. 3d at 425-26. Based on the foregoing, Saltzman is entitled to qualified immunity on Count II.

## CONCLUSION

For the reasons identified above, and for good cause shown, Defendant General B. Chance Saltzman requests that this Honorable Court dismiss the individual capacity claims against him.  Oral argument is requested.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

C. SALVATORE D'ALESSIO, JR.
Director, Torts Branch

ANDREA W. MCCARTHY
    Deputy Director, Torts Branch

*/s/  Shmuel Bushwick*
SHMUEL BUSHWICK
Trial Attorney
New York Reg. No. 5268271
New Jersey Reg. No. 073632013
Torts Branch, Civil Division
United States Department of Justice
P.O. Box 7146, Ben Franklin Station
Washington, D.C. 20044
Phone: (202) 305-0401
Fax: (202) 616-4314
E-mail: Shmuel.bushwick@usdoj.gov

*Counsel for General B. Chance Saltzman*
*in his Individual Capacity*

23